**Ralph WASCHE, Personal Representative of the Estate of Crescentia Grace Wasche, a.k.a. Grace Wasche, Deceased, Respondent,**

v.

**MILBANK MUTUAL INSURANCE COMPANY, Appellant.**

**Clark Edward BOCK, Respondent,**

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Appellant.**

**Nos. 48051, 48534.**

Supreme Court of Minnesota.

June 30, 1978.

---

**3.** See, *Schumann v. City of St. Paul*, Minn., 268 N.W.2d 903 (filed herewith); L.1978, c. 736 (effective August 1, 1978).

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Rider, Bennett, Egan & Arundel, and William George, Minneapolis, for amicus Mut. Service Cas. Ins. Co.

Rischmiller, Wasche & Knippel, Minneapolis, Minnesota Trial Lawyers Assn., James Schwebel and Gregory Joseph, Minneapolis, for amicus curiae.

Rider, Bennett, Egan & Arundel, William George and Richard Nygaard, Minneapolis, for appellant in No. 48051.

James Schwebel and Gregory Joseph, Minneapolis, for respondent in No. 48051.

Heard before ROGOSHESKE, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

In each of these consolidated appeals, defendant insurance companies appeal from a summary judgment for the insured or insured's representative in which the trial court "stacked" the maximum coverages for no-fault basic economic loss benefits under each of two applicable insurance policies permitting the insured to recover such no-fault benefits to the extent of actual losses up to the combined policy limits of both policies. In each case, the insurer contends

that the stacking of two or more obligations to pay no-fault basic economic loss benefits is inconsistent with the purpose and provisions of the Minnesota No-Fault Automobile Insurance Act, Minn.St. 65B.41 et seq. We do not agree, and under the rationale of our cases stacking compulsory uninsured-motorist coverages, we are persuaded to affirm.

The facts in each case are undisputed. In the first case, Crescentia Grace Wasche, a Minnesota resident visiting in California, was injured in a collision between two California automobiles in 1976. Mrs. Wasche was a passenger in one of the colliding vehicles. As a result of her injuries, her medical expenses were in excess of $46,913.40, and upon her subsequent death, her funeral expenses were $1,966. At the time of the collision, Mrs. Wasche lived in the household of her daughter-in-law, Delores Wasche, in Minnesota. Delores Wasche owned two automobiles and maintained a separate plan of reparation security for each automobile. Both policies were written by Milbank Mutual Insurance Company (Milbank). Each policy provided coverage for no-fault basic economic loss benefits in the maximum amounts required by § 65B.44, subds. 1 and 4, which are $20,000 for medical expense and $10,000 for replacement services and other losses, including $1,250 for funeral expense benefits, for injury to any one person.

The personal representative of Mrs. Wasche's estate sought to recover basic economic loss benefits under both policies to the extent of actual losses up to the stacked policy limits of $40,000 for medical expenses and $2,500 for funeral expenses. Milbank tendered payment of $21,250, the policy limits of one of the policies for medical and funeral expense, and then pleaded affirmatively that this fully complied with the insurance policy and the requirements of L.1974, c. 408, the Minnesota No-Fault Automobile Insurance Act.[1]

The trial court stacked the no-fault coverage permitting recovery of basic economic loss benefits to the extent of the combined policy limits of $40,000 for medical expenses plus the $1,966 actually incurred for funeral expenses. Upon Milbank's payment of $21,250, summary judgment was ordered requiring the insurer to pay an additional $20,000 medical expenses and $716 funeral expenses. Milbank appeals.

In the second case, the insured, Clark Bock, was seriously injured in a single-car roll-over accident in 1976 which occurred while he was driving his 1965 Chevrolet pickup truck. He incurred medical expenses in excess of $20,000. At the time of the accident, Clark Bock owned two vehicles, and each was insured in his name under a separate policy from Mutual Service Casualty Insurance Company (Mutual Service). Clark's father, who lived with Clark and his wife, also owned an automobile which was insured with Mutual Service under the father's name. The policy limits of no-fault basic economic loss coverage on each of the three policies were $20,000 for medical expenses and $10,000 for income, replacement services, and other losses as required by § 65B.44, subd. 1.

Clark sought no-fault benefits under all three policies to the extent of medical expenses actually incurred. Both parties moved for summary judgment. The trial court granted summary judgment for Mutual Service as to the father's policy, finding that Clark, as a named insured in his policy, was not insured under his father's policy according to the provisions of § 65B.43, subd. 5,[2] and granted summary judgment for Clark as to the two policies held in his own name, holding that he could recover to the extent of medical expenses actually incurred up to the stacked $40,000 limit of the policies.

Mutual Service appeals from the judgment, arguing that both the language in its

1. Upon this appeal, Milbank does not rely upon its policy language but rather relies exclusively upon the no-fault insurance statute in arguing that stacking of the policies is precluded.

2. See, footnote 4, infra.

policy[3] and the provisions of the No-Fault Automobile Insurance Act preclude stacking of no-fault policies. The insured in each case argues that stacking of no-fault benefits is required under our case law which has stacked mandatory uninsured-motorist insurance coverages.

Both appeals raise these issues of first impression: (1) Whether stacking of two or more policy obligations to pay no-fault basic economic loss benefits is precluded under § 65B.41 et seq., and (2) what effect should be given to provisions of insurance policies purporting to prohibit stacking of no-fault coverages.

1. Section 65B.41 et seq., adopted by the legislature in 1974, requires each automobile owner in this state to maintain a plan of reparation security for personal injury and property damage as to each automobile owned. § 65B.48. Each such insurance policy issued in this state must provide coverage for basic economic loss benefits, payable without regard to fault, § 65B.49, subd. 1, in a maximum amount of $30,000 per person per injury, including $20,000 for medical expenses and $10,000 for disability and income loss, replacement services loss, and survivor's replacement services loss. § 65B.44. Every person injured in an automobile accident in this state or any person injured in an automobile accident outside the state who is an insured or occupant of a vehicle insured in this state has a right, subject to some exceptions, to recover basic economic loss benefits without regard to fault for the stated kinds of personal injury damages actually incurred. § 65B.46.

Since every Minnesota automobile owner must insure each vehicle registered to him, several insurance policies could be potentially applicable to each injury. Therefore, § 65B.47 provides a series of priorities which determine the insurance policy to which the injured person must look for recovery of no-fault basic economic loss benefits. Ordinarily, as in the cases now before us, the injured person must look to his own policy or the policy under which he is an insured. § 65B.47, subd. 4. Since the injured person was an insured under more than one policy in each case,[4] more than one

---

3. The Mutual Service policies under which Clark is an insured contain the following language: "1. Regardless of the number of persons insured, policies or plans of self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the Company's liability for personal injury protection benefits with respect to bodily injury sustained by any one eligible injured person in any one motor vehicle accident shall not exceed $30,000 in the aggregate and subject to such aggregate:

"(a) The maximum amount payable for medical expenses shall not exceed $20,000;
* * *

\* \* \* \* \* \*

"F. Non-duplication of benefits; other insurance. No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar insurance including self-insurance. In the event the eligible injured person has other similar insurance including self-insurance available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the

applicable limits of liability of this coverage and such other insurance."

4. Minn.St. 65B.43, subd. 5, provides: " 'Insured' means an insured under a plan of reparation security as provided by Laws 1974, Chapter 408, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with Laws 1974, Chapter 408 as an insured:

"(1) a spouse,
"(2) other relative of a named insured or
"(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.
"A person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere."

Under this definition, Mrs. Wasche, who owned no vehicle and was named in no policy, was an insured under each of two policies insuring her daughter-in-law in whose household she resided. Clark was an insured under each of two policies naming him as an insured. He was not an insured under his father's policy, although residing in the same household, because Clark himself was "identified by name in

policy remains applicable under the priorities of § 65B.47 in each case. Whenever more than one policy is applicable under the priorities of § 65B.47, the question can arise whether the injured person may stack no-fault coverages so as to recover basic economic loss benefits to the extent of actual injuries up to the combined policy limits of all applicable policies.

■ Insurers maintain that § 65B.44 prescribes a ceiling of $30,000 maximum recovery of no-fault basic economic loss benefits for any one injury, thereby prohibiting stacking of two or more coverages.[5] As we read the statute, § 65B.44 serves only to define the unit of basic economic loss coverage required under § 65B.49 in each plan of reparation security issued in the state.[6] Section 65B.49, subd. 6, requiring insurers to offer optional no-fault coverages of $10,000 or $20,000 for medical expenses in addition to the basic compulsory $30,000 no-fault coverage on any one policy, demonstrates that the legislature did not intend § 65B.44 to have the effect of uniformly limiting no-fault recovery to $30,000 per injury. Section 65B.44 gives no guidance as to the extent of intended no-fault recovery for any single injury when more than one policy coverage is applicable under the priorities of § 65B.47.

■ Only one provision of the act relates to that situation. Section 65B.47, subd. 5, provides in pertinent part:

"If two or more obligations to pay basic economic loss benefits are applicable to

an injury under the priorities set out in this section, *benefits are payable only once* and the reparation obligor against whom a claim is asserted shall process and pay the claim as if wholly responsible, but he is thereafter entitled to recover contribution pro rata for the basic economic loss benefits paid and the costs of processing the claim. * * *" (Italics supplied.)

Insurers contend that the "benefits are payable only once" language of this section precludes the injured person from recovering basic economic loss benefits in excess of the policy limits of any one applicable policy. Insureds contend, and the trial courts determined, that the quoted statutory language was intended merely to prevent double recovery of benefits for the same items of loss.

We are persuaded, as were the trial courts, that § 65B.47, subd. 5, does not preclude stacking of two or more obligations to pay basic economic loss benefits on a single priority level. In enacting § 65B.47, subd. 5, the legislature adopted verbatim the language of § 4(d) of the Uniform Motor Vehicle Accident Reparations Act, 13 U.L.A., which is intended to govern the priority of applicability of each insurance policy under provisions of the uniform act. An injured person need file only one claim against one insurer to be compensated without regard to fault under that act. Since there are no finite policy limits, the need for stacking to insure recovery of

---

[another] contract for a plan of reparation security" under this section.

5. Section 65B.44 provides in part: "Subdivision 1. Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and shall provide a maximum of $30,000 for loss arising out of the injury of any one person, consisting of:

"(a) $20,000 for medical expense loss arising out of injury to any one person; and

"(b) A total of $10,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person."

6. Section 65B.49 provides in part: "Subdivision 1. On and after January 1, 1975, no insurance policy providing benefits for injuries arising out of the maintenance or use of a motor vehicle shall be issued, renewed, continued, delivered, issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, under provisions approved by the commissioner, requiring the insurer to pay, regardless of the fault of the insured, basic economic loss benefits.

    *    *    *    *    *    *

"Subd. 2. Each plan of reparation security shall provide for payment of basic economic loss benefits."

actual losses would never arise under the uniform act. Therefore, the language of § 4(d), now § 65B.47, subd. 5, of our act, must have been intended only to preclude double recovery for the insured's losses and to pro rate those losses through contribution among insurers of two or more policies on a single priority level. The language of § 65B.47, subd. 5, is nothing more than a standard pro rata clause commonly contained in insurance policies to prevent double recovery and pro rate losses when more than one insurer is involved.

Construing a provision like § 65B.47, subd. 5, under a no-fault act similar to ours,[7] the Nevada Supreme Court recently determined that stacking of no-fault policies at the same level of priority was not legislatively prohibited. *Travelers Ins. Co. v. Lopez*, Nev., 567 P.2d 471 (1977). We agree with the interpretation of the Nevada Supreme Court.

Insurers point to no other provision of the no-fault act, and we find no other provision of the act, which precludes stacking of two or more obligations to pay basic economic loss benefits on a single priority level. Conversely, we find no provision in the statute which expressly mandates stacking of basic economic loss coverages.

As an indication of legislative intent, we observe that the no-fault act was adopted at a time when stacking of multiple compulsory coverages was the recognized rule in the analogous context of uninsured-motorist coverage, yet the legislature did not see fit to include any provision in the act which would prohibit stacking or alter in any way our holdings in the uninsured-motorist context.

Our uninsured-motorist statute[8] required that each insurance policy issued in the state include uninsured-motorist coverage, and this requirement has been carried forward in § 65B.49, subd. 4, of the no-fault act. Under the uninsured-motorist statute, we approved stacking of two or more such coverages in order to secure for the insured the coverage for which he had paid on each policy,[9] and we held that policy provisions purporting to prohibit stacking of uninsured-motorist coverages are void as repugnant to the statute. *Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973); *In re Pleitgen v. Farmers Insurance Exchange*, 296 Minn. 191, 207 N.W.2d 535 (1973).[10]

Both uninsured-motorist coverage and basic economic loss benefits protect persons, not vehicles; the injured person ordinarily looks to his own policies or those covering him as an insured whether or not associated with the particular vehicle involved in the collision. See, e. g., § 65B.47, subd. 4. Both uninsured-motorist and no-fault coverages are compulsory. Under the statute, a vehicle owner is compelled to maintain a plan of reparation security for

---

7. Nev.Rev.Stat. 698.260(4) is identical to Minn.St. 65B.47, subd. 5, except for the omission of the second sentence governing contribution among insurers.

8. See, Minn.St.1967, § 72A.149, and Minn.St. 1971, § 65B.22.

9. In *Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 187, 207 N.W.2d 348, 351 (1973), we said: "It seems to us that, in spite of the attempt by the insurer to limit its liability to one policy or to the amount recoverable under one policy, the fact that the legislature required an uninsured-motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for in each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery exceeding what he would have received if the unin-

sured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium."

10. See, also, *Integrity Mut. Ins. v. State Auto. & Cas. Underwriters*, 307 Minn. 173, 239 N.W.2d 445 (1976); *Taylor v. Great Central Ins. Co.* 305 Minn. 446, 234 N.W.2d 590 (1975) (stacking personal liability insurance with uninsured-motorist coverage); *Brunmeier v. Farmers Ins. Exchange*, 296 Minn. 328, 208 N.W.2d 860 (1973) (stacking uninsured-motorist coverage with worker's compensation payments).

each of his vehicles in the state, § 65B.48, and he must pay separate premiums to provide both uninsured-motorist and no-fault coverages on every policy. § 65B.49, subds. 1, 2 and 4. Absent an express statutory prohibition of stacking in the no-fault context, insurers offer no compelling reason to deny stacking of compulsory basic economic loss coverages while stacking of uninsured-motorist coverages is recognized and permitted.[11]

■ Against the background of our holdings stacking uninsured-motorist coverages, we believe that, had the legislature intended that stacking could now be prohibited

under the no-fault act in either the uninsured-motorist or the no-fault context, it would have so provided. This it did not do.[12] While the legislative intent is not free from doubt,[13] we hold that under the present statute the injured person shall be allowed to recover basic economic loss benefits under each no-fault coverage applicable to him as an insured to the extent of actual losses up to the stacked policy limits of all policies applicable on a single priority level. Should we have misconceived the legislature's intent, we invite a clear expression. As we fully recognize, the issue is one where the public interest can best be served

11. Mutual Service asserts that stacking of coverages applicable to a single injury for which separate premiums have been paid is not required to prevent an unearned premium windfall to the insurer in the no-fault context, although prevention of such a windfall served as part of the rationale for our decisions stacking uninsured-motorist coverage. These assertions rest upon disputed issues of fact as to the manner in which no-fault insurance premiums were calculated, and the extent to which the additional premiums charged on separate policies accurately reflect any increase in the insurer's risk that may be associated with each additional vehicle added to a multicar household in which the number of drivers remains constant. These disputed issues of fact in Bock could not be determined without a remand for a full hearing, yet no remand is sought. Both parties in each case have sought summary judgment upon the record presented as to whether or not stacking is precluded under the provisions of § 65B.41 et seq. That legal issue was properly determined by the trial courts and is determined here as a matter of legislative intent under the no-fault act without need to determine the adequacy of present premium rates, with or without stacking. Under § 65B.70, subd. 5, premium rates are to be reviewed annually by the commissioner and may be fairly adjusted in accordance with the statutory scheme; our interpretation of the legislature's intent is not influenced by assumptions which may have been made in setting present insurance rates.

Milbank and Mutual Service suggest that future insurance premium rates will increase if stacking of no-fault coverages is permitted. Having determined that the legislature did not preclude the stacking of no-fault benefits under § 65B.41 et seq., surely it is not for this court to legislate such a preclusion on the basis of these insurers' unsubstantiated projections of future insurance rates.

12. As a possible further indication of legislative intent, it may be noted that the 1978 Legisla-

ture has recently rejected a proposed amendment to § 65B.47 which would have clearly prohibited stacking of no-fault coverages under two or more applicable policies. See, House File 1707, Sec. 2, as reported with amendments from the senate commerce committee, March 13, 1978. The language which the legislature rejected would have provided: "*Subd. 7. If two or more insurance policies covering basic economic loss benefits are in force, the amount of recovery shall not exceed the amount which could be recovered in basic economic loss benefits under one policy. The existence of two or more insurance policies covering basic economic loss benefits shall not increase the amount of recovery for basic economic loss benefits beyond that provided by one insurance policy.*"

13. Although falling short of demonstrating a clear legislative intent to preclude stacking, the insurance companies' arguments that stacking is inconsistent with the provisions of our no-fault act are not without merit. Summarized, they include the following: Our act is a "modified," not a "pure," no-fault plan requiring a limited maximum no-fault coverage rather than coverage to the full extent of loss. Its design was intended to cover the greater number of small or moderate losses without regard to fault, which had previously burdened our fault-based tort system. Its expectation was to eliminate the cost of that burden and thereby to keep automobile insurance premiums at reasonable levels. Under this statutory scheme, the premium paid by the insured is based upon the risk of the recovery by an injured claimant being no greater than the maximum amount specified in the act. If stacking is permitted, the cost of no-fault insurance will increase, thus defeating one of the primary reasons for its adoption. Finally, stacking policies will result in gross inequities to members of a multicar household, depending on which family member happens to be the named insured or "unidentified" insured.

920

by a legislative, rather than a judicial, resolution of the problem.

2. Accordingly, it follows that a clause in an insurance policy purporting to preclude stacking of no-fault coverages for which separate premiums have been paid must be declared void as against the public policies recognized in our holdings in the uninsured-motorist contest and repugnant to the present statute. Insureds are entitled to recovery of basic economic loss benefits in accordance with the judgments entered.

Affirmed.