Herbert L. PETERSON, Respondent,

v.

IOWA MUTUAL INSURANCE
COMPANY, Appellant.

No. 81–419.

Supreme Court of Minnesota.

Feb. 12, 1982.

Green, Merrigan, Johnson & Quayle and
L. T. Merrigan, Minneapolis, for appellant.

Rischmiller, Wasche & Knippel and John
E. Wasche, Minneapolis, for respondent.

PETERSON, Justice.

The question presented is whether the
$200 ceiling on weekly income loss benefits,
provided by Minn.Stat. § 65B.44, subd. 3
(1980), is subject to stacking. The district
court permitted the insured to stack the
weekly rate of payment. We affirm.

Plaintiff Herbert L. Peterson sustained a
back injury while departing from his car on
April 19, 1979. At the time of the injury,
each of Peterson's four motor vehicles was
insured through a policy issued by defend-
ant Iowa Mutual.

Peterson filed claims with Iowa Mutual
for various items of economic loss caused by
the injury. Medical expenses of $5,749.35
were fully reimbursed. Iowa Mutual, how-
ever, paid only $2,600 compensation for 13
weeks of lost wages.[1] Peterson's weekly
gross income at the time of the injury is
claimed to have been $766.36.

Peterson brought this action to compel
payment of additional income loss benefits
allegedly due. He claims that the $200
maximum weekly rate of payment applica-
ble to each of his four no-fault coverages
should be stacked, permitting him to receive
85% of his gross weekly income loss, or
$651.41 per week. The district court grant-
ed Peterson's motion for declaratory judg-
ment, allowing him to stack the payment

---

1. Iowa Mutual compensated Peterson at $200
per week based upon Minn.Stat. § 65B.44,
subd. 3 (1980), which reads in pertinent part:
"Disability and income loss benefits shall pro-
vide compensation for 85 percent of the injured
person's loss of present and future gross in-
come from inability to work proximately
caused by the nonfatal injury subject to a maxi-
mum of $200 per week."

rates, and preserved for trial issues related to the amount of his claim and the interest thereon. Iowa Mutual appeals from the order.

In *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978), we held that stacking of total funeral expense benefits payable under section 65B.44 through two or more applicable coverages was not legislatively prohibited. The premise underlying our holding in *Wasche* is that the function of section 65B.44 is to define the unit of basic economic loss coverage required in each plan of reparation security. The section is not read to proscribe stacking. *Id.* at 917. This premise has survived the test of consideration by subsequent sessions of the state legislature. Iowa Mutual presents us with no evidence of a legislative intent to treat the rate-of-payment ceiling in section 65B.44, subd. 3, differently from the other limits set forth in section 65B.44.

Minn.Stat. § 65B.42(1) (1980) expresses the intent to "relieve the severe economic distress of uncompensated victims of automobile accidents" through insurance policies "which will provide prompt payment of specified basic economic loss benefits." A further objective is to prevent overcompensation and duplicate recovery. Neither of these goals is impeded by permitting an injured insured to collect income loss benefits simultaneously under separate policies up to 85% of his or her gross wage loss. Indeed, the theme of our stacking opinions has been to ensure that policyholders receive the full benefit of their contracts and, should there be a "windfall," it should fall to the insured who has paid a premium. *Weiss v. Farmers Insurance Group*, 302 N.W.2d 353, 355 & n.2 (Minn.1981).

Iowa Mutual contends that stacking payment rates is unfair because it has granted discounts on premiums for multi-vehicle policies. But, in *Wasche*, we announced that "our interpretation of the legislature's intent is not influenced by assumptions which may have been made in setting present insurance rates." *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d at 919 n.11.

The rule that Iowa Mutual asks us to adopt would force many households onto a budget well below their usual standards, regardless of the injured wage earner's prior income or the number of policies on which premiums are being paid. This rule is necessary, it is asserted, to prevent the no-fault system from operating to benefit the wealthy at the expense of the average insured. This fear is unfounded.

The only cross-subsidization which could occur under a system whereby income loss benefits are stacked is from those insureds who cannot recover up to their stacked limit (because of the 85%-of-gross-income formula) to those who can. For example, in the case before us, Peterson has paid premiums to Iowa Mutual on four policies of no-fault coverage. After stacking these coverages, he will receive substantially less than the $800 per week rate to which he is potentially entitled. Because his income entitles him to no more than $651.41 per week,[2] he is in effect leaving with the no-fault system part of the value of his contracts.

On the other hand, an insured paying for fewer units of coverage would in many cases receive the maximum value of his contracts based on an income less than Peterson's.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.

---

**2.** We use these figures only for purposes of *illustration and expressly acknowledge that the* amount of Peterson's claim is an issue that has been preserved for trial and is not before us now.