## Manghillis v. Allstate Insurance Co.

*Maurice A. Cardone*, for plaintiff.
*John J. Aponick, Jr.*, for defendant.

TOOLE, *J.*, January 4, 1983—We have before us for determination preliminary objections in the nature of a demurrer, motion to strike, or in the alternative, for a more specific pleading which essentially require yet another judicial construction of the Pennsylvania No-fault Motor Vehicle Insurance Act.[1]

Before considering the substantive nature of defendant's preliminary objections, we feel compelled to comment on the manner in which these objections are set forth. The first objection states "The Complaint does not state a cause of action against the Defendant." As this court has noted:

An accurate description of the type pleading which this Court expects is contained in 2 Goodrich-Amram 2d Sec. 1028(a):1, pp. 238-239. ' . . . The pleader must steer an intelligent middle course between giving adequate information and writing a brief in the objections.' Bott v. Villa II Builders, No. 11118 (Luzerne Co. 1976).

Our most recent reiteration of this view can be found in Alan M. Reilly v. R.C. Williams Insurance

---

1. Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq. (Supp. 1981-82) hereinafter referred to as the "No-fault Act."

Agency, Inc. and Insurance Company of North America, No. 1932-C of 1981 (Luzerne Co. 1982). See also Brennan v. Smith, 6 Pa. Commw. 342, 299 A. 2d 683 (1972); Oas v. Com., 8 Pa. Commw. 118, 301 A. 2d 93 (1973).

In considering and resolving the demurrer before us, we are required to comply with the standards set forth in Gekas v. Shapp, 469 Pa. 1, 364 A. 2d 691 (1976), wherein the court stated:

The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law (Citations omitted.) In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. (Citations omitted.) If there is any doubt, this should be resolved in favor of overruling the demurrer: Clevenstein v. Rizzuto, 439 Pa. 397, 266 A. 2d 623 (1970).

Cognizant of the above mentioned standard, we proceed to examine the factual posture of this matter.

The complaint in assumpsit was filed on March 15, 1982, and the pertinent facts are as follows: Plaintiff, Alfred J. Manghillis, is the administrator of the estate of Gary S. Manghillis. Plaintiff was insured by defendant, Allstate Insurance Company, under three separate policies[2] in accordance with the provisions of the no-fault act. Plaintiff's decedent was killed in a motor vehicle accident on

2. Policy No. 008866345 insuring a 1972 VW; Policy No. 008866345 insuring a 1975 American; Policy No. 008981080 insuring a 1974 Austin.

March 17, 1980. At the time of the accident, decedent was a 22-year-old student, not employed and with no work history.

The preliminary objections raise essentially four questions.

1. Whether the estate of a deceased victim is entitled to recover work-loss benefits.

2. Whether the deceased victim's status as a minor who never worked precludes recovery of work-loss benefits.

3. Whether the personal representative of the estate may aggregate or pyramid single work-loss policy limits of individual policies.

4. Whether plaintiff may recover reasonable attorney's fees, costs and interest at the rate of 18 percent per annum.

The first two issues were authoritatively determined by the Superior Court in Freeze v. Donegal Mutual Insurance Company, _____ Pa. Super. _____, 447 A. 2d 999 (1982).

In answering the first issue in the affirmative, the court specifically stated, "We hold today that the estate of a deceased victim is entitled to recover work-loss benefits under the no-fault act." Freeze, at 1004.

In addressing the second question, the court held that §205(c) of the act sets forth the appropriate method by which the work loss of one not employed at the time of the accident is to be calculated:

"(c) Not employed.—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual perod."

The court then indicates at 447 A. 2d 1005:

Because the victim was never employed the 'probable annual income' referred to in Section 205(c)(1) will be 'the average annual gross income of a production or nonsupervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs' as required by Section 205(d)(c) of the Act: 40 P.S. §1009.205(d)(c). See Marryshaw v. Nationwide Mut. Ins., 13 D. & C. 3d 172 (1979). (Footnotes omitted.)

The factual and legal circumstances of Marryshaw closely resemble those at bar. There the court held that a 19-year-old college student who had never worked could collect work-loss benefits under §205(c) based on a "probable annual income" as that term is defined in §205(d)(c). In confronting an argument similar in substance to the one advanced by Allstate, the court responded at 13 D. & C. 3d at 175-176:

Stated in the most simple terms, defendant disclaims responsibility to plaintiff for work loss because, prior to the accident, she never was gainfully employed and, in the future, when she has recovered sufficiently from her injuries, she plans to continue as a full-time student at East Stroudsburg State College, which might be expected to preclude gainful employment so long as that status continues. This view fails to take into consideration the established principle of Pennsylvania tort law that impairment of earning capacity

resulting from physical or mental injury caused by an accident, is a legitimate element of damages, and that proof of this element does not depend upon showing that, at some time, the victim was gainfully employed.

Defendant further argues that work-loss benefits are to be paid only when the loss accrues. Freeze squarely addressed this issue stating at 447 A. 2d 1005:

. . . it has been suggested that the fact that the victim never worked creates a problem about determining the proper 'accrual period' to be utilized in fixing the work-loss amount; we think the existence of such a problem illusory. The 'accrual period,' instantly, the number of years the deceased victim would have worked had he survived the accident, can be readily established by reference to actuarial tables and other relevant statistical compilations. This is true even though the deceased victim was never given the chance to work and that, therefore, we cannot precisely fix the date of his entry into the working world. (Emphasis supplied.)

See also Anfuso v. Erie Ins. Group, _____ Pa. Super._____, 452 A. 2d 870 (1982).

We must now decide whether plaintiff may cumulate or "stack" the individual work-loss limits of his respective policies in order to recover up to the actual amount of work loss. In examining this issue, we are confronted with numerous divergent decisons in both Pennsylvania and other jurisdictions throughout the country. The perplexing nature of this issue is compounded by diametrically opposed holdings in our own state and federal systems.

From our review of the case law, we have been

only be gleaned from a close reading of the plethora of cases on the subject. We have compartmentalized these factors in an attempt to assist us in our own analysis of the issue.

In deciding the stacking question, numerous courts have considered the applicability of decisions permitting stacking under the uninsured motorist act.[3] Here we examine the judicial prudence of drawing an analogy between the stacking of benefits provided for under the uninsured motorist act to those provided for under the no-fault act. In Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A. 2d 112 (1968), the Pennsylvania Supreme Court considered and struck down a liability-limiting or anti-stacking clause stating at p. 115:

The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

The court then proceeded to allow the insured to pyramid separate coverages under other available policies up to their individual limits, or to the amount of the actual loss.

The opinion concludes at p. 115-116:

We will not permit it [the insurance company] to avoid its statutorily imposed liability by its unilateral insertion into the policy of a liability limiting

___

3. Act of Aug. 14, 1963, P.L. 909 §1, as amended, 40 P.S. §2000 et seq.

clause repugnant to the statute. See also State Farm Mutual Automobile Insurance Company v. Williams, 481 Pa. 130, 392 A. 2d 281 (1978); Sones able to isolate at least five factors which courts have looked to in deciding this issue. Some jurists find one or two of these factors or rationales dispositive while others engage in a more protracted and sophisticated examination before reaching a decision. We must emphasize that the identification and separation of these various rationales can v. Aetna Casualty and Surety Co., 270 Pa. Super. 330, 411 A. 2d 552 (1979).

The initial Pennsylvania decision to permit stacking in the no-fault context is Wilson v. Keystone Ins. Co., 3822 November term, 1979 (Phila. May 7, 1981). There the court embraced the analogy and stated, " . . . after full consideration of the views expressed by our appellate courts pertaining to uninsured motorist coverage and analyzing them in connection with the expressed purpose of the No-fault Act, we find an insured may cumulate and recover losses under applicable no-fault policies . . . ". Acquiescing in Wilson, Heinsey v. Nationwide Ins. Co., 21 D. & C. 3d 127, 130 (1981), indicates, "the stacking of benefits is well established in the analogous area of uninsured motorist coverage." See also O'Bryan v. United States Fidelity and Guaranty Company, No. G.D. 80-S-3732 (York Co. 1982). Achieving a similar result but pursuing a somewhat different tack, Scheirer v. Nationwide Ins. Co., No. G.D. 80-2559 (Allegheny Co., Oct. 1, 1981) refuses to equate an underinsured motorist with an uninsured motorist, but the court nevertheless finds the latter line of cases "very instructive." Scheirer suggests that Harleysville and its progeny "reveals that insurance companies attempt to limit their liability by prohibiting

stacking of basic loss benefits for uninsured motorist claims were contrary to the intent of the legislature." (Slip op. at 3.) Legislative intent, as a determinative factor, will be more fully explored below. Similarly in Bredlinger v. Allstate Ins. Co., 64 Westmoreland L.J. 67, 69 (1981), the court states, "While not dispositive . . . the stacking allowed in uninsured motorist cases is not without significance." Minnesota's Supreme Court in Wasche v. Milbank Mutual Ins. Co., _____ Minn. _____, 268 N.W. 2d 913 (1978), a widely cited case on this issue, held that uninsured motorist decisions were analoguous in the no-fault context.

In opposition to the above holdings is Pontius v. United States Fidelity and Guaranty Co., 102 Dauphin 432 (1981). In Pontius, the court was unpersuaded by plaintiff's argument that stacking of no-fault coverage is analogous to stacking of uninsured motorist coverage. In rejecting these contentions Judge Morgan intertwines serveral of the rationales presently under consideration. He states at p. 436:

The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers and a liberal construction of the statute was perceived as appropriate to achieve this legislative intent. Harleysville Mut. Cas. Co. v. Blumling, 429 Pa. 389, 241 A. 2d 112 (1969). Put another way, stacking of uninsured motorist coverage rests on the practical assumption that if the owner of an automobile doesn't have insurance on it, he probably doesn't have anything else either. Although the No-fault Act declares essential the maximum feasible restoration of injured individuals and compensation of economic losses, it also emphatically states and reiterates the need for and

its own purported design of a low-cost insurance system. Whether stacking accords with that purpose is properly a matter for the legislature.

In accord with Pontius is the Federal District Court's opinion in Kirsch v. Nationwide Ins. Co. 532 F. Supp. 766 (W.D. Pa. 1982). Kirsch sets forth a forceful and cogent argument against the uninsured motorist analogy. The court explains that the uninsured motorist act and the no-fault act have entirely different purposes. The former was enacted specifically to provide coverage to innocent victims of negligent acts of uninsured third parties. It was not intended to limit causes of action against tortfeasors, but to assure recovery where tortfeasors are financially unable to pay any judgment awarded. Uninsured motorist act places no statutory maximum on the amount of coverage any individual insured can obtain, only the minimum amount of coverage each insurance policy must provide. The latter, however, provides: 532 F. Supp. at 768:

. . . for a specific amount of possible recovery to be awarded to victims of motor vehicle accidents, *regardless of fault. . . .* once the statutory ceilings are exceeded, the negligent party is still liable for any further damages caused by his actions. The cause of action against the faulty driver is not limited at this point. Furthermore, the very fact that, unlike the Uninsured Motorist Act, the No-Fault Act does contain statutory ceilings in the amount of recovery indicates an intent to limit the amount of no-fault recovery under the statute.

The statutory cap on recovery under the no-fault act in contradistinction to the limitless recovery under the Uninsured Motorist Act becomes the single most important factor considered by Kirsch

in prohibiting stacking. "Since the legislature placed specific ceilings on those types of recovery [work loss, replacement services and survivor's loss], it can reasonably be inferred that these ceilings represent that 'reasonable amount' of recovery to be provided by the Act." 532 F. Supp. at 769.

We find neither of these extremes palatable. Although the analogy is imperfect, we nevertheless find it instructive and clearly indicative of appellate court thought on the issue of stacking in that context.

Insurance Companies contend that this enactment emphatically emphasizes the need for a low-cost insurance system. It is postulated that insurance premium rates will increase if stacking of no-fault coverage is permitted. The question is then posed: Would not stacking thwart the very purpose of the act? This argument was considered by the Minnesota Supreme Court in Wasche. There the court states at 268 N.W. 2d at 919 m. 11:

. . . our interpretation of the legislature's intent is not influenced by assumptions which may have been made in setting present insurance rates . . . having determined the legislature did not preclude the stacking of no-fault benefits . . . , surely it is not for this Court to legislate such a preclusion on the basis of these insurer's unsubstantiated projections of future insurance rates.

Drawing a parallel between Minnesota and Pennsylvania, the Bredlinger opinion rejects out of hand the low cost argument stating "the forecast of inflated insurance costs is [not] indicative of legislative intent." 64 Westmoreland L.J. at p. 70.

Public policy is yet another factor which courts have examined in construing the no-fault act. Subsumed within a consideration of this aid to con-

struction is the issue of what effect, if any, should be given to a clause in a policy which clearly and unambiguously prohibits stacking. While the present record does not contain a copy of the policy in question, defendant has appended to his brief a copy of a brief filed by Allstate in Washington County in which this issue was addressed. For purposes of the matter sub judice, we will assume that the instant Allstate policy contains an identical clause prohibiting the stacking of basic no-fault benefits.

Initially, we would note that it is the declared public policy of some states to permit an insurance company to insert a clause which prohibits an insured from stacking individual coverages. Most notably among these are Kansas and Michigan. In McNemee v. Farmers Ins. Group, 228 Kan. 211, 612 P. 2d 645 (1980), the Kansas Supreme Court held that a legislatively authorized exclusion governs the extent of personal injury protection benefits recoverable when inserted in an insurance contract and is binding on the parties. Similarly, Michigan indicates, " . . . in view of what we perceive as the legislative intent to preclude 'stacking' of personal injury protection benefits, we conclude that the plaintiff's argument that there exists a public policy against enforcing 'other insurance' clauses is untenable." O'Hannesian v. Detroit Automobile Inter-Insurance Exchange, _____ Mich. App. _____, 312 N.W. 2d 229, 232 (1981).

However, absent an express legislative directive to the contrary, the overwhelming majority of courts have declared that public policy prohibits an insurance company from enforcing such clauses. Wilson declares, " . . . it is our view that this limiting clause cannot stand since such an exclusionary

clause would permit it [the insurance company] to circumvent the purpose of providing for 'the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors. . . ." Wilson, slip op. at 5.

In Scheirer, Judge Louik expresses a similar view stating, "This Court refuses to recognize this liability-limiting language because it is contrary to the legislative intent and produces an unfair result." Scheirer slip op. at 4.

Finally, in Bredlinger, the court considered and declared void a liability-limiting clause identical to the one contained in the policy presently under consideration.

We also note that the tenor of the above mentioned Pennsylvania decisions has been echoed by the Nevada judiciary. See Cooke v. Safeco Insurance Company, 94 Nev. 463, 587 P. 2d 1324 (1978); Travelers Insurance Company v. Lopez, 93 Nev. 463, 567 P. 2d 471 (1978).

We now turn to the remaining and possible most important factors identified by courts which have wrestled with this issue.

When called upon to construe a statute, a court must look to the intent of the legislature. Once discerned, this intent becomes a polestar which guides the court through the murky and muddled waters of imprecise and ambiguous language.[4]

Wilson turned on an analysis of legislative intent. Judge Gelfand found the legislative policy expressed in §1009.102 of the No-fault Act. This section has become the focal point of several decisions and its pertinent provisions are as follows:

---

4. See generally Statutory Construction Act of 1972, 1 Pa.C.S.A. §1501 et seq. and 34 P.L.E. §121 to 181.

§ 1009.102   Findings and purposes

(a) Findings—The General Assembly hereby finds and declares that:

• • •

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

• • •

(4) to avoid any undue burden on commerce during the intrastate transporation of individuals, it is necessary and proper to have a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims;

• • •

(6) careful studies, intensive hearings, and some State experiments have demonstrated that a basic system of motor vehicle accident and insurance law which:

(A) assures every victim payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss; and

(B) eliminates the need to determine fault except when a victim is very seriously injured, is such a low-cost, comprehensive, and fair system;

• • •

(b) Purposes.—Therefore, it is hereby declared to be the policy of the General Assembly to establish a reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle victims and the survivors of deceased victims. (Emphasis added.)

Wilson concludes that the above expressed findings evidence "the clear intent of the no-fault act that there be a system of insurance whereby all injured parties covered by this act be compensated to the full extent of their injuries up to the maximum amounts of all applicable insurance policies but not in excess of the actual damages so long as the premiums are paid." Wilson slip op. at 4. See also Heinsey v. Nationwide Ins. Co., 21 D. & C. 3d 127 (1981); Eget v. Maryland Casualty Co., Lehigh Co., No. 79-C 1451 (September 24, 1982).

Some courts state that legislative silence on this issue should not be construed as an indication that stacking should be prohibited. Scheirer slip op. at 4. Similarly, in O'Bryan, the court indicates " . . . absent a clear expression of legislative opposition to stacking, we find that the stacking of coverages paid under separate premiums for separate vehicles should be permitted to achieve the maximum feasible restoration and compensation of economic losses suffered in motor vehicle accidents."

Conceptually allied with legislative silence as a manifestation of legislative intent is the legislature's awareness of decisions allowing stacking in the uninsured motorist context. Both O'Bryan and Bredlinger specifically point to the importance of this factor. In drawing a continuing parallel between Minnesota and Pennsylvania, Judge Ackerman, in Bredlinger, states:

. . . when it passed the No-fault Act in 1974 [the legislature], was aware that the stacking of uninsured motorists' benefits had been the law since 1968 when the Pennsylvania Supreme Court decided, Harleysville Mutual Casualty Co. v. Blumling. Had the legislature opposed the extension of stacking into the area of no-fault, it could have

followed the course of Florida and Kansas and unequivocally prohibited it in the Act: 64 Westmoreland L.J. at p. 70.

This sentiment was reiterated in O'Bryan, " . . . the legislature was aware of the practice of stacking coverage under the uninsured motorist statute during the time it was considering the contents of the no-fault legislation and could have clearly expressed its disapproval of stacking."

As has been previously mentioned, the pertinent provisions of Minnesota's no-fault act are virtually identical to those of Pennsylvania. In endeavoring to discover intent, the Minnesota Supreme Court states: Wasche, 268 N.W. 2d at 918.

As an indication of legislative intent, we observe that the no-fault act was adopted at a time when stacking of multiple compulsory coverages was the recognized rule in the analogous context of uninsured-motorist coverage, yet the legislature did not see fit to include any provision in the act which would prohibit stacking or alter in any way our holding in the uninsured motorist context.[5]

Kirsch and Pontius stand in opposition to the above mentioned line of cases. Kirsch examines the reasoning in Wilson and flatly states its disagreement with that court's conclusion. In rejecting Wilson and construing the act to prohibit stacking, Judge Weber looks to the very same legislative

5. We note the legislatures of at least three states have specifically prohibited the stacking of individual coverages. These so-called anti-stacking amendments have been adopted in Michigan, Florida, and Louisiana. See O'Hannesian, State Farm Mutual Auto Ins. Co. v. Kilbreath, 362 So. 2d 474 (Fla. App. 1978); Breaux v. Louisiana Farm Bureau Mut. Ins. Co., 413 So. 2d 988 (Louisiana App. (1982) ). The Kansas legislature has permitted an insurer to contractually exclude the possibility of stacking: McNemee (612 P. 2d at 647, 648).

findings and purposes. The court is of the opinion that the clear and unmistakable intent of the legislature in enacting no-fault is the implementation of a low cost insurance system. Judge Weber finds support for his position in Pontius: 102 Dauphin at 436.

Although the No-Fault Act declares essential the maximum feasible restoration of injured individuals and the compensation of economic losses, it also emphatically states and reiterates the need for its own purported design of a low cost insurance system.

Finally, courts have considered what legal consequences flow from the contractual nature of these insurance policies. That is, should the insured, because he has paid separate premiums for each vehicle, now be permitted to aggregate the separate coverages? The overwhelming majority of courts conclude that this is yet another reason which augurs in favor of the ability of insured's to aggregate coverages.

In Scheirer, Judge Louik states, " . . . the insurance companies are being paid premiums on these policies while at the same time denying the claims of qualified insureds."

Minnesota has consistently focused upon this as a significant factor in deciding the stacking issue.

Minnesota requires residents to carry no-fault insurance. In interpreting our statute, we have held that Minnesota residents are entitled to stack benefits where they own more than one vehicle on the premise that a premium is charged for such coverage on each vehicle; therefore, the insured is entitled to all the benefits he has paid for: Petty v. Allstate Insurance Co., _____ Minn. _____, 290 N.W. 2d 763 (1980). See also Peterson v. Iowa

Mutual Insurance Co., _____ Minn. _____, 315 N.W. 2d 601 (1982); Holman v. All Nation Insurance Co., _____ Minn. _____, 288 N.W. 2d 244 (1980) and Wasche, 268 N.W. 2d at 919.

In addition, the Supreme Court of Nevada holds, "The insured is entitled to the protection he may reasonably expect for the premiums he pays." Cooke, 587 P. 2d at 1325.

In their appended brief, Allstate maintains that the insurance commissioner has promulgated regulations specifically interpreting the no-fault act to permit (if not mandate) exclusion of "stacking." This argument was considered and we think correctly decided by the court in Bredlinger. "Allstate makes a strong argument that it has relied on the regulations of the Insurance Commission and that stacking will significantly increase premium costs, but neither this reliance on executive regulations nor the forecast of inflated insurance costs is indicative of legislative intent." 64 Westmoreland L.J. 70.

After a careful examination of the above cited authority, we chose to align ourselves with the jurisdictions which have permitted an insured to pyramid or stack individual policy limits. We find most persuasive the public policy, legislative intent and separate premium rationale. While "stacking" is approved, an insured's recovery is limited to the lesser of either the accumulated policy limits or the amount of his actual loss.

Lastly, plaintiff seeks recovery of 18 percent interest and counsel fees pursuant to §1009.106 and 107. Kirsch speaks directly to this issue: 532 F. Supp. 770.

Finally, plaintiff claims that it is entitled to attorney fees and 18% interest due for overdue pay-

ments pursuant to 40 P.S. 1009.106(a)(1): Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A. 2d 419 (1981) held that the 18% charge is not a penalty and is to be assessed for all overdue payments, regardless of the good faith of the insurer or the reasonable cause of the delay. Therefore, such an award for interest is proper here. The Hayes case also holds, however, that attorney's fees are only to be awarded in the event of bad faith on the part of insurer. Since we recognize the uncertainty of the state of the law in this area, we find no bad faith delay on the part of the defendant and will not award attorney's fees.

We concur in the above cited holding. Thus if defendant's refusal to pay was based on good faith regarding a legitimate issue of law, then there should be no recovery of attorney fees: Hartleb v. Ohio Casualty Ins. Co., _____ Pa. Super. _____, 451 A. 2d 506 (1982).

### ORDER

It is hereby ordered, adjudged and decreed that the preliminary objections of Allstate Insurance Company are overruled.