529 N.W.2d 467 (1995)
Marsha BEMBOOM, Respondent,
v.
DAIRYLAND INSURANCE COMPANY, Appellant.
No. C3-94-2075.
Court of Appeals of Minnesota.
April 4, 1995.
*468 Michael J. Scott, Jensen, Hicken, Gedde & Scott, Anoka, for respondent.
Sandra Grove, Mahoney, Dougherty & Mahoney, P.A., Minneapolis, for appellant.
Considered and decided by RANDALL, P.J., KLAPHAKE and DAVIES, JJ.

OPINION
RANDALL, Judge.
Dairyland Insurance Company appeals from the trial court's grant of summary judgment for Marsha Bemboom, arguing that the court erred as a matter of law by determining that Dairyland is the primary no-fault payor under Minn.Stat. § 65B.47, subd. 4 (1990). We affirm.

FACTS
This issue arose out of an automobile accident in June, 1992, in which Marsha Bemboom was injured. At the time, she was a passenger in a truck owned and driven by her brother Erik. Marsha's medical expenses resulting from the accident have exceeded $45,000.
The parties agree there were three automobile insurance policies in effect at the time of the accident. The first was Marsha's brother's policy with Farmers Insurance Company issued to Erik and under which Erik was the named insured. The other two policies were issued to her father, Gerald Bemboom. Dairyland issued one of these policies and the other was issued by Farmers Insurance Company. The parties agree that Marsha was a resident relative of both Erik and Gerald at all relevant times.
Marsha sought and recovered $20,000 in no-fault medical loss benefits under Erik's policy from Farmers. She also sought additional payments from Dairyland, which denied her request. Marsha then brought a declaratory judgment action against Dairyland to establish that Dairyland's policy was primary under Minn.Stat § 65B.47, subd. 4 (1990).
The Dairyland policy's declarations sheet lists Gerald Bemboom and his address under the category of "INSURED INFORMATION," and lists Gerald, Barbara, his wife, and Marsha, his daughter, under the "DRIVER INFORMATION" category. The Dairyland policy defines the term "named insured" as "the person or organization named in the declarations." The policy also defines "You and Your" as
the person named on the declarations page and that person's husband or wife if residing in the same household with the person named on the declarations page. You, your, also means any other relative of the person named on the declarations page residing in the same household with the person named on the declarations page and any minor in the custody of the person named on the declarations page or of a relative residing in the same household with the person named on the declarations page. You, your, does not include any person identified by name in any other contract or policy of insurance issued pursuant to the Minnesota No-Fault Insurance Law.
(Emphasis in original.)
At a second summary judgment hearing, Marsha argued that under the priority provisions of the no-fault act, she was not primarily insured by the Farmers policy under which she had already collected benefits. She points out that although Farmers paid her on her claim without arguing that they were secondary to Dairyland, Farmers voluntary payment to her does not preclude her from attempting to show that Gerald's Dairyland policy should be considered primary, as it is only on that policy that she is a named insured. Marsha Bemboom asserted that the only policy that listed her by name was Dairyland. It is not disputed that she is listed on the Dairyland policy's declaration page by name under "DRIVER INFORMATION." Thus, she argues the Dairyland policy should be her primary payor under Minn. Stat. § 65B.47, subd. 4. She is attempting to *469 require Dairyland to pay its policy limits of $20,000 for her no-fault medical losses.
The court stated that Marsha was identified by name under Defendant Dairyland's policy. She was not identified by name under either Erik or Gerald Bemboom's Farmers policies. Thus, pursuant to the definition of "insured" under the statute, [Marsha] was an "insured" under only Defendant Dairyland's policy.
Accordingly, the trial court granted summary judgment for Marsha in July, 1994. This appeal followed.

ISSUE
Did the trial court err by determining that Dairyland was the primary no-fault payor under the policy language and Minn.Stat. §§ 65B.47, subd. 4, 65B.43, subd. 5 (1990) and granting summary judgment for Marsha Bemboom?

ANALYSIS
At oral argument, the parties agreed that subrogation rights and issues still remain. We do not address those, as they were not briefed, or addressed, or argued to the trial court.
The interpretation of an insurance policy's language is a question of law that a reviewing court determines de novo. State Farm Ins. Co. v. Seefeld, 481 N.W.2d 62, 64 (Minn.1992); Meister v. Western Nat'l Mut. Ins., 479 N.W.2d 372, 376 (Minn.1992). An insurance policy must be considered as a whole, and a reviewing court's function is to ascertain and give effect to the parties' intent. See Henning Nelson Constr. v. Fireman's Fund Am. Life Ins., 383 N.W.2d 645, 652 (Minn.1986); Fillmore v. Iowa Nat'l Mut. Ins., 344 N.W.2d 875, 877 (Minn.App.1984).
In the absence of ambiguity, the terms of an insurance contract must be understood in their plain, ordinary, and popular meaning. Reitzner v. State Farm Fire & Casualty, 510 N.W.2d 20, 23 (Minn.App.1993). Where the policy language is ambiguous, a reviewing court must construe the policy against the insurer. Nordby v. Atlantic Mut. Ins., 329 N.W.2d 820, 822 (Minn.1983).
The Minnesota no-fault act has established a priority scheme for insurers' liability to pay benefits. The statute provides that:
(a) The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured.

(b) The security for payment of basic economic benefits applicable to injury to the driver or other occupant of an involved vehicle who is not an insured is the security covering that vehicle.

(c) The security for payment of basic economic loss benefits applicable to injury to a person not otherwise covered who is not the driver or other occupant of an involved motor vehicle is the security covering any involved motor vehicle.
Minn.Stat. § 65B.47, subd. 4 (1990) (emphasis added). The act defines "insured" as
an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:

(1) a spouse
(2) other relative of a named insured or

(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.
Minn.Stat. § 65B.43, subd. 5 (1990) (emphasis added).
The no-fault act also provides that where two or more insurers are on the same priority level, and one insurer pays no-fault economic loss benefits,

benefits are payable only once and the reparation obligor against whom a claim is asserted shall process and pay the claim as if wholly responsible, but the reparation obligor is thereafter entitled to recover contribution pro rata for the basic economic loss benefits paid and the costs of processing the claim. Where contribution is sought among reparation obligors responsible under subdivision 4, clause (c), *470 proration shall be based on the number of involved motor vehicles.
Minn.Stat. § 65B.47, subd. 5 (1990) (emphasis added). Thus, where several insurers are on the same priority level and one pays no-fault benefits, the insured is entitled to recover only once, and the insurer that paid benefits is entitled to recover contribution pro rata from the other insurers at the same priority level. Id.
The statute also states that when insurers are on different priority levels, and
a reparation obligor pays basic economic loss benefits which another reparation obligor is obligated to pay under the priority provided in this section, the reparation obligor that pays is subrogated to all rights of the person to whom benefits are paid.
Minn.Stat. § 65B.47, subd. 6 (1990). Thus, when the insured receives no-fault benefits from a lower priority insurer, the lower priority insurer has the right to pursue a subrogation recovery against the primary obligor for the funds the primary obligor should have paid.
The trial court granted Marsha's second summary judgment motion because she was "identified by name" under Dairyland's policy but was not identified by name in the other two insurance policies. The trial court concluded that Dairyland was the primary payor under Minn.Stat. § 65B.47, subd. 4, and was required to pay her medical expenses to its $20,000 policy limits. We agree with counsel that the policy language at issue is not a model of clarity, but we agree with the trial court that Dairyland looks to be the most primary. Further, the equities and the intent of the no-fault act point to Dairyland as closest to the risk, and the insurer with the most knowledge to make choices.
Dairyland alone of the three companies had Marsha Bemboom supply answers which identified her to them as a listed driver. They knew her traffic violation record, or the lack of one. Right in the policy Dairyland recited the negative traffic points of Gerald Bemboom, his wife Barbara, and Marsha. Dairyland accepted the risk of insuring Marsha, could have refused to accept her as an insured driver, could have charged Gerald an additional premium for listing Marsha, or made whatever other underwriting determinations they may have felt were needed.
In the sense that one essential purpose of no-fault PIP legislation is that everyone should have at least one car to look to for PIP coverage, it is not unfair on these facts, when faced with a choice of three policies, to choose Dairyland.
The court properly determined that the fact that Marsha received payments from another carrier "does not preclude her from recovering economic loss benefits from the insurer which is the primary obligor." See Reed v. Continental Western Ins., 374 N.W.2d 436, 439 (Minn. 1985) (holding that an insured that received payments from one carrier was not precluded from recovering economic loss benefits from another carrier where the second carrier was the primary obligor, and had previously refused coverage).
The parties agree Marsha is covered under all three policies as a resident relative. The parties agree the policies have equal priority unless she is identified by name as an insured in another insurance policy. See Minn. Stat. §§ 65B.43, subd. 5, 65B.47, subd. 4; Wasche v. Milbank Mut. Ins., 268 N.W.2d 913, 916 n. 4 (Minn.1978). The parties disagree, however, whether she is identified by name as an insured in the Dairyland policy under Minn.Stat. § 65B.43, subd. 5 (1990), such that Dairyland becomes the primary payor.
Marsha Bemboom argues she is not precluded from seeking coverage from Dairyland as the primary obligor under Reed, 374 N.W.2d at 439, and that the trial court correctly determined that Dairyland is the primary payor and obligated to pay her medical loss expenses to the $20,000 policy limits because she was named in the Dairyland policy. We agree.
Although Dairyland argues to the contrary, we conclude the policy language upon which the parties rely is ambiguous. Because we conclude that the policy language as to a "named insured" is ambiguous, we construe the policy against the insurer. Nordby, 329 N.W.2d at 822. We conclude *471 Marsha is a named insured under the Dairyland policy, and that Dairyland is the primary payor for no-fault benefits. See Minn. Stat. § 65B.47.
We further conclude that any arguments regarding impermissible stacking of benefits under Minn.Stat. § 65B.47, subd. 7 (1990) are unpersuasive. This case does not involve the insurance coverage for two or more motor vehicles. It involves sorting out who is the primary obligor. On this set of facts, if more than one company pays, subrogation issues yet to be decided should negate any inference that Marsha Bemboom is being allowed to "stack" coverages.

DECISION
The insured was not precluded from seeking benefits from a primary obligor simply because a lower priority insurer stepped forward and paid benefits. The trial court properly granted summary judgment for the insured on the issue of who was her primary obligor.
Affirmed.