**Mary E. MURPHY, individually and as trustee for the heirs of Gary K. Murphy, Decedent, Respondent,**

v.

**MILBANK MUTUAL INSURANCE and Kemper Insurance Companies, Appellants.**

Nos. 81–1355, 82–24.

Supreme Court of Minnesota.

June 11, 1982.

---

Sally Holmgren and Clarence E. Hagglund, Minneapolis, for Milbank Mut. Ins. Co.

Arndt & Benton and Duane E. Arndt, Minneapolis, for Kemper Ins. Co.

David Sandberg, Forest Lake, for Murphy.

PETERSON, Justice.

These appeals arise out of a declaratory judgment action to determine insurance coverages for the motor vehicle death of a Minnesota resident in Iowa. The trial court granted summary judgment for decedent's spouse, holding that the Iowa vehicle with which decedent's truck collided was an "uninsured motor vehicle." Summary judgment was also granted in favor of the no-fault carrier for decedent's family automobiles, declaring that basic economic loss benefits could not be stacked across priority levels. We affirm.

The parties have stipulated to the following facts:

Gary K. Murphy died as a result of injuries sustained in an automobile/truck collision in Bremer County, Iowa, on October 29, 1977. Plaintiff Mary E. Murphy is decedent's surviving spouse, parent and guardian of his daughter and duly appointed trustee for his heirs and next-of-kin.

The automobile involved in the accident was owned and driven by Walter G. Engel, a resident of Iowa. His vehicle was registered and garaged in Iowa and insured for bodily injury liability in the sum of $10,000 per injury and $20,000 per occurrence—such limits being in accordance with Iowa law. (Engel's insurer has paid out under the policy in settlement of the claim against it and is not a party to this action.)

Gary Murphy was driving a semi-tractor trailer owned by United States Industries, Inc. and registered in Minnesota. At the time of the accident, the truck was insured by defendant American Motorists Insurance Company (Kemper Insurance Companies) under a policy entered into outside of Minnesota.

Gary and Mary Murphy owned two family automobiles registered in Minnesota. At the time of the accident, these vehicles were insured by defendant Milbank Mutual under policies issued in Minnesota.

1. Mary Murphy argued before the trial court that the Engel vehicle falls within our statutory definition of "uninsured motor vehicle." Minn.Stat. § 65B.49, subd. 4(3) (1976), defines an "uninsured motor vehicle" as "any motor vehicle for which a plan of reparation security meeting the requirements of [sections 65B.41 to 65B.71] is not in effect." One requirement incorporated by reference into that definition is the minimum residual liability insurance amount of $25,000 per person/$50,000 per accident. Minn.Stat. § 65B.49, subd. 3(1) (1980). The Engel policy carries limits less than the minimum and therefore, Murphy argues, Engel was an uninsured motorist.

Milbank Mutual and Kemper Insurance suggest another interpretation of subd. 4(3). Emphasizing the word "requirements," they point out that none of the requirements of the Minnesota no-fault law apply to an Iowa driver on Iowa roads. This reading of the statutory definition must be rejected, because it would force us to conclude that Engel was not "uninsured" even if he carried no insurance. Nonetheless, insurers claim that Engel's compliance with Iowa law somehow satisfies the definitional test and removes his vehicle from the class of uninsured vehicles.

This is a straightforward issue of statutory construction and the provision in question is unambiguous. The legislature chose to classify uninsured vehicles by reference

to Minnesota liability coverage requirements, and we have held that an "uninsured motor vehicle is one which does not carry insurance meeting the minimum legal requirements" of the Minnesota No-Fault Automobile Insurance Act. *DiLuzio v. Home Mutual Insurance Co.*, 289 N.W.2d 749, 751 (Minn.1980). Thus, the trial court properly ruled that the Engel vehicle, carrying only $10,000 liability coverage for one person injured in one accident, was an "uninsured motor vehicle."

2. The facts of this case raise the possibility of stacking the coverage provided by Kemper Insurance on the United States Industries truck and that provided by Milbank Mutual on the Murphy family automobiles. The trial court held that plaintiff could stack the uninsured motorist coverages, following the "closest to the risk" doctrine for apportioning liability between the insurance companies. *See Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976). This ruling of the trial court has not been challenged on appeal.

 The trial court further held that Murphy could not stack basic economic loss benefits because, under Minn.Stat. § 65B.47 (1980), the Kemper Insurance policy rests on a higher priority level than the Milbank Mutual policies. Murphy appeals from this ruling.

In *Koons v. National Family Insurance Co.*, 301 N.W.2d 550 (Minn.1981), we ruled that stacking is not permitted when basic economic loss benefits are provided by policies applicable on different priority levels. We acknowledge the factual differences between this case and *Koons*, but we are not persuaded to create an exception to the general proposition of *Koons*.

The *Koons* rule was derived from the holding in *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn. 1978), which "contains two important qualifiers that reflect the justifications for stacking." *Koons*, 301 N.W.2d at 553. *Wasche* permitted stacking of basic economic loss benefits only where the coverage was (1) applicable to the injured party *as an insured* and (2) applicable *on a single priority level*. In *Koons* we declined to extend stacking of basic economic loss benefits to a situation where neither of the *Wasche* qualifiers was satisfied.

Stacy Koons was seriously injured while jumping from a haywagon. Her guardian sought to stack basic economic loss benefits under policies issued on the pickup truck pulling the wagon and the overtaking automobile that struck Stacy. The legislature had declared that these coverages took a lower priority than the no-fault policy issued to Stacy's mother. In denying permission to stack coverage provided through policies under which the injured party was not an "insured," we emphasized that denial of stacking in that case did not result in an unearned premium for the insurer, paid for by the injured party as an insured.

Gary Murphy, on the other hand, was an insured under the Milbank Mutual policies, and the premiums were paid by him and his wife. Thus the concerns that were central to our discussion in *Koons* are satisfied. The holding in *Koons* goes further, however, and warns that the "clear language of the decision in *Wasche* would be greatly expanded * * * if stacking across priority levels is determined to be permissible. There appears to be no justification for such an expansion of *Wasche*." *Koons*, 301 N.W.2d at 554.

The priorities set forth in section 65B.47 are intended to assign liability for basic economic loss benefits to the coverage that most closely contemplates the risk leading to the injury. When Milbank Mutual insured vehicles for the Murphy's personal use, it surely did not intend protection against risks created by Gary Murphy's employment as a truckdriver. We accordingly affirm the trial court's order denying permission to stack basic economic loss benefits.

Affirmed.