Michael David **MEISTER**,
et al., Respondents,

v.

**WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,**
petitioner, Appellant,

**Mutual Service Casualty Insurance
Company, et al., Respondents.**

No. C1–90–1997.

Supreme Court of Minnesota.

Jan. 17, 1992.

Rehearing Denied Feb. 26, 1992.

Gregory J. Johnson, Theodore J. Smetak, Arthur, Chapman & McDonough, Minneapolis, for appellant.

Harry L. Newby, Jr., Newby, Lingren, Newby & Carlson, Ltd., Cloquet, for Michael David Meister, et al.

Richard J. Kruger, St. Paul, for Mut. Service Cas. Ins. Co., et al.

Jan M. Gunderson, Louise A. Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, for amicus, Ins. Federation of Minnesota.

YETKA, Justice.

This case comes before us on stipulated facts and involves whether the 1985 anti-stacking amendment to the Minnesota No-Fault Automobile Insurance Act[1] forecloses the requirement that Western National Mutual Insurance Company (hereinafter Western National), as insurer of plaintiff Meister, pay benefits in addition to the basic economic loss benefits paid by Mutual Service Casualty Insurance Company (hereinafter MSI), the insurer of Michael Meister's employer. The District Court of Carlton County ruled in favor of Western National, the court of appeals reversed, and Western National appealed here. We affirm the court of appeals.

On August 9, 1988, Michael Meister suffered severe head injuries when he was thrown from the back of the pickup truck in which he was riding. Meister's employer, Gunflint Lodge, Inc., owned and furnished the truck from which Meister fell; however, Meister was not working at the time of the accident. The accident occurred after another lodge employee who was transporting the lodge's inflatable river rafts agreed to drive Meister and another employee to a place where they could go rafting. The rafts were loaded in the back of the pickup with Meister sitting on top of them. En route to the drop-off point, one

---

1. Minn.Stat. § 65B.47, subd. 7 (1988) reads as follows:

Unless a policyholder makes a specific election to have two or more policies added together the limit of liability for basic economic loss benefits for two or more motor vehicles may not be added together to determine the limit of insurance coverage available to an injured person for any one accident. An insurer shall notify policyholders that they may elect to have two or more policies added together.

of the rafts blew out of the truck, throwing Meister to the pavement. Since the accident, Meister has incurred medical bills in excess of $60,000.

MSI insured the truck under a business automobile policy that provided $20,000 in medical expenses and $20,000 in non-medical expense limits of basic economic loss benefits. Meister was also an insured under the personal automobile policy of his father, David J. Meister. In that policy, issued by Western National, David J. Meister elected to increase by $20,000 his $20,000/$20,000 basic economic loss coverage applicable to each of his two insured vehicles, resulting in $40,000 each of medical and non-medical coverage for each insured.

The Western National policy also provided an exclusion with respect to personal injury protection benefits coverage in its Minnesota endorsement:

*Exclusions.* This coverage does not apply:

\* \* \* \* \* \*

   c. to "bodily injury" sustained by any person arising out of the maintenance or use of a "motor vehicle"

   (1) being used in the business of transporting persons or property, or

   (2) furnished by the employer of the "named insured" or "relative."

If with respect to such vehicle the security required by the Minnesota No-Fault Automobile Insurance Act is in effect.

On October 26, 1988, Meister submitted an application to MSI for basic economic loss benefits. On November 8, 1988, MSI tendered $20,000 in medical expense benefits to Meister for medical expenses incurred as a result of the accident. On November 21, 1988, Meister rejected the $20,000 draft tendered by MSI because he determined that he was entitled to basic economic loss benefits from Western National. Meister had filed his claim for benefits with Western National on November 10, 1988. At the time of the summary judgment motion, MSI had not withdrawn its November 8, 1988 tender of basic economic loss benefits.

On January 18, 1989, Meister commenced suit against Western National, MSI, and Gunflint Lodge, Inc. He contended that, as a matter of law, he was entitled to receive economic loss benefits from Western National in the amount of $40,000 for medical expense benefits and $40,000 for income loss benefits pursuant to Minn.Stat. § 65B.44, subds. 1(a), (b). In the alternative, Meister claimed that he was entitled to add the benefits of the Western National policy to those of the MSI policy.

The trial court granted summary judgment in favor of Western National, holding that MSI, as the insurer of the employer's vehicle, provided the sole source of basic economic loss coverage for Meister's medical expenses. The trial court predicated its conclusion on the applicability of the business vehicle priority section of Minn.Stat. § 65B.47, subd. 1 (1988), which determines the payment source of basic economic loss benefits. That provision reads in pertinent part:

   In case of injury to the driver or other occupant of a motor vehicle \* \* \* if the accident causing the injury occurs while the vehicle is being used in the business of transporting persons or property, the security for payment of basic economic loss benefits is the security covering the vehicle or, if none, the security under which the injured person is an insured.

Minn.Stat. § 65B.47, subd. 1 (1988).

The trial court stated that subdivision 1 applied in this case even though Meister "was, for his own nonwork-related purposes, riding in a truck which was being used to transport property belonging to the Gunflint Lodge." *Home Mut. Ins. Co. v. Snyder*, 356 N.W.2d 780 (Minn.App.1984). The trial court additionally denied Meister's alternative claim as violative of the prohibition against cross-priority stacking, which is "interdicted by the higher courts in Minnesota."

The court of appeals reversed and held that Meister should prevail on an alternative basis. *Meister v. Western Nat'l Mut. Ins. Co.*, 465 N.W.2d 428 (Minn.App.1991). The appeals court affirmed the trial court's determination that MSI was responsible for

basic economic loss benefits under the priority subdivisions of Minn.Stat. § 65B.47. Although the court stated that it was "almost certain" that subdivision 1 applied to the instant case, it held that the coverage under subdivision 2 was "clearly applicable." 465 N.W.2d at 430. Subdivision 2 reads in pertinent part:

In case of injury to an employee * * * if the accident causing the injury occurs while the injured person is driving or occupying a motor vehicle * * * furnished by the employer, the security for payment of basic economic loss benefits is the security covering the vehicle or, if none, the security under which the injured person is an insured.

Minn.Stat. § 65B.47, subd. 2 (1988). According to the court of appeals, because Meister was an employee in his employer's vehicle, the business vehicle priority of subdivision 2 applied without regard to whether Meister was injured in the course and scope of his employment. 465 N.W.2d at 430.

However, the court of appeals also held that some of the Western National policy coverage was available to Meister as "additional first-party coverage." *Id.* at 431. According to the court, this result was mandated by the 1985 anti-stacking amendment to the Act (Minn.Stat. § 65B.47, subd. 7). That amendment

created an entirely new situation. We no longer have traditional stackings. Now, when insureds elect the "added together" coverage * * * they are not choosing to stack "basic economic loss benefits," as contemplated by pre–1985 stacking cases. Before 1985 stacking occurred by operation of law; now an insurance purchaser chooses to have double coverage; to buy voluntarily another $40,000 of insurance over and above basic economic loss benefits.

465 N.W.2d at 430–31 (footnote omitted).

The appeals court pointed out that the priority system of Minnesota's no-fault act applied only to *basic economic loss benefits,* which the Act clearly defines.

Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and shall provide a *maximum of* $40,000 for loss arising out of the injury of any one person, consisting of:

(a) $20,000 for medical expense loss arising out of injury to any one person; and

(b) a total of $20,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person.

Minn.Stat. § 65B.44, subd. 1 (1988) (emphasis added).

The court of appeals held that economic loss benefits exceeding the $40,000 maximum are not *basic* economic loss benefits. Instead, they are " 'additional benefits' as provided for in section 65B.49, subdivision 7 (1988), and 'optional economic loss benefits' as referred to in sections 65B.53, 65B.58, and 65B.60." *Meister,* 465 N.W.2d at 431 (footnote omitted). The court concluded that the priority section is limited to *basic economic loss benefits* and, by its terms, does not apply to "additional" or "optional economic loss" benefits.

Accordingly,

[u]nder the circumstances of this case, we are not talking about "stacking." We are not stacking the same coverage, rather we are determining first, which policy covers the basic economic loss benefits and, second, giving effect to additional protection that has been purchased by [Meister's] father, and requiring the insurer to pay the added benefits that it contracted to pay to covered members of the Meister family if seriously injured in an automobile accident.

*Meister,* 465 N.W.2d at 431.

For purposes of this appeal, Western National contends that the legislature did not intend to abrogate the prohibition against crossing priorities in enacting the anti-stacking amendment. Western National also argues that, even if this were the intent of the 1985 amendment, it did not "contract to pay" no-fault benefits on a

cross-priority basis because its business use exclusion of personal injury protection benefits applied.

■ The construction of statutes is a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). This court is not bound by the lower courts' conclusions in applying a statute to undisputed essential facts. *Sherek v. Independent School Dist. No. 699, Gilbert*, 449 N.W.2d 434, 436 (Minn.1990) (citing *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv.*, 260 N.W.2d 579, 582 (1977)). Thus, this court is not bound by the court of appeals' interpretation of the 1985 amendments to the Minnesota No–Fault Automobile Insurance Act.

■ Similarly, the interpretation of insurance contract language is a question of law as applied to the facts presented. *National City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 175 (Minn.1989). Where there is no dispute of material fact, this court must independently review the lower courts' interpretations of the insurance contract. *Id.* Here, although the court of appeals did not expressly address the issue, this court may independently review the court of appeals' implicit conclusion that Western National "contracted to pay" additional benefits.

The analysis of this court's prohibition on "cross-priority stacking" begins with *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978). There, the court held that an injured person "shall be allowed to recover basic economic loss benefits under each no-fault coverage applicable to him as an insured to the extent of actual losses up to the stacked policy limits of all policies applicable *on a single priority level.*" *Id.* at 919 (emphasis added). Since that holding, this court has refused to stack basic economic loss benefits which apply on different priority levels. *See, e.g., Murphy v. Milbank Mut. Ins. Co.*, 320 N.W.2d 423 (Minn.1982); *Koons v. Nation-*

al *Family Ins. Co.*, 301 N.W.2d 550 (Minn. 1981).[2]

■ The priority scheme provides that, insofar as possible, a person suffering loss should make a claim for basic economic loss benefits against the policy under which he or she is an insured. Unif. Motor Vehicle Accident Reparations Act (hereinafter UMVARA) § 4, 14 U.L.A. 56 (1990). However, when a business vehicle is involved, the primary obligation to pay basic economic loss benefits is on the owner of the vehicle. M. Steenson, 1 *Minnesota No–Fault Automobile Insurance* 126 (2d ed. 1989).

The purpose of the business vehicle priority section is to place liability for basic economic loss benefits on the owners of business vehicles as a cost of doing business. *Id.* (citing Minnesota Automobile Liability Study Commission, *Report to the 1973 Legislature*, 23 (1973)). Accordingly, the priorities "assign liability for basic economic loss benefits to the coverage that most closely contemplates the risk leading to the injury." *Murphy*, 320 N.W.2d at 425.

Prior to the 1985 anti-stacking amendment, the court allowed stacking on a single priority level by operation of law for two reasons: "[T]he legislature requires certain coverages in all policies; and second, a premium having been paid for that coverage, the insurer is not to receive a windfall in premiums paid for coverage not honored." *Yeager v. Auto–Owners Ins. Co.*, 335 N.W.2d 733, 737 (Minn.1983) (citations omitted). Conversely, if cross-priority stacking had been allowed, coverage would have been available for which no premium was paid. *See Koons*, 301 N.W.2d at 553.

In *Koons*, the individual incurred more than $100,000 in medical expenses when she jumped from a hay wagon and an automobile struck her. The injured party received the $20,000 maximum in medical ex-

---

**2.** The court of appeals has followed this prohibition in its own line of cases. *See, e.g., Lanners v. National Family Ins. Co.*, 424 N.W.2d 95 (Minn.App.1988); *Madden v. Home Ins. Co.*, 367 N.W.2d 676 (Minn.App.1985); *Kelsey v. State Farm Mut. Auto. Ins. Co.*, 365 N.W.2d 795 (Minn.App.1985).

pense benefits payable under her mother's policy. Her mother then sought to recover no-fault medical expense benefits from the insurers of the drivers involved. *Id.* at 551. The court did not permit stacking of the medical expense benefits because (1) the injured individual was not an insured under either insurer's policy, and (2) no premiums that reflected the risk of injury to her were paid to the insurers. *Id.* at 553–54.

The court rejected the argument that the priorities established in the Act identify *the order* in which policies at any priority level must provide the source of no-fault benefits to the extent of actual loss. *Id.* at 554. Rather, the priorities identify the policy or policies on the first applicable level of priority as *the only source* of basic economic loss coverage available to an insured. *Id.* Thus, because the first applicable priority level was subdivision 4(a), the benefits the injured party sought to stack under subdivision 4(c) were unavailable. *Id.*

*Murphy* also involved an attempt to stack basic economic loss benefits payable under a personal automobile policy with those already paid under an employer's policy. 320 N.W.2d at 425. In refusing to stack the benefits, the court held that the insurer of the personal automobile "surely did not intend protection against risks created by [decedent's] employment as a truckdriver." *Id.* As it had in *Koons,* the court warned that the " 'clear language of the decision in *Wasche* would be greatly expanded * * * if stacking across priority levels is determined to be permissible. There appears to be no justification for such an expansion of *Wasche.*' " *Id.* (quoting *Koons,* 301 N.W.2d at 554).

In this case, the court of appeals gave effect to coverage that might have been prohibited under this court's decisions in *Murphy* and *Koons.* However, the pre–1985 cases involved attempts to stack basic economic loss coverage under policies on different priority levels. They did not involve, as here, attempts to allow recovery of optional coverage in addition to basic economic loss benefits whose payment source had already been determined through the application of section 65B.47. Consequently, this case does not involve "cross-priority stacking" in the sense prohibited by the pre–1985 cases.

■ In electing to increase coverage for economic loss benefits, an insured is choosing to add first-party coverage for losses not covered because of the limitations on no-fault benefits in the Act. Allowing the insured to purchase this coverage is consistent with original provisions of the Act.[3] *See* Steenson, *supra* p. 7, at 11; UMVARA § 16, 14 U.L.A. 81 (1990). Accordingly, any additional coverage purchased above the $20,000/$20,000 in basic economic loss benefits should be available because the priorities in section 65B.47 do not apply to such added economic loss benefits.

Finally, the concerns expressed in *Koons* are partially satisfied here. First, Meister is an insured under his father's policy, unlike the injured individual in *Koons* who was not covered under either driver's policy. Second, Meister's father paid an extra premium to insure against a risk of this magnitude. Because the coverage sought is additional rather than basic economic loss benefits, we believe there is sufficient justification for this apparent "expansion of *Wasche* " in this case.

Western National argues that its policy was intended to cover different risks (*i.e.,* the policy covered the two vehicles personally used by the Meister family). As did the private insurer in *Murphy,* Western National contends that it did not intend to protect against risks created by Meister's employment. This may be true with respect to basic economic loss coverage. That liability is assigned to the coverage that most closely contemplates the risk leading to the injury (here, the MSI policy). However, we think the insurance company which issues a policy under which addition-

---

**3.** Originally, the Act provided for the mandatory offer of additional coverage in section 65B.49, subdivision 6 (1974). The "additional" or "optional" coverage included increased medical expense and income loss benefits, residual liability coverage, motorcycle liability coverage, and uninsured and underinsured motorist coverage. Subdivision 6 was repealed in 1980. *See also* Steenson, *supra* p. 7, at 257–64.

al economic loss benefits are purchased is liable for that additional coverage (here, Western National).

▮▮▮ The legislature did not change the definition of basic economic loss benefits in its 1985 amendments. Under section 65B.44, basic economic loss benefits are still limited to *a maximum* of $20,000 in medical expense benefits and $20,000 in income loss and other benefits. We must presume that, in enacting a statute, the legislature acted with full knowledge of prior legislation on the same subject. *People for Envtl. Enlightenment & Responsibility, Inc. v. Minnesota Envtl. Quality Council*, 266 N.W.2d 858, 866 (Minn.1978). Here, the mandatory offer of benefits above basic economic loss benefits as they are defined must be presumed to refer to "additional" or "optional" economic loss benefits, as the court of appeals held.

However, we are mindful that the 1985 Legislature not only prohibited the stacking, but also created an "excess" form of uninsured/underinsured motorist coverage. *See* Minn.Stat. § 65B.49, subd. 3a(5) (1986). Under the latter provision, covering accidents in which an insured is "occupying" a motor vehicle, an insured may recover up to his or her own personal policy limits to the extent they exceed the limits on the occupied vehicle. *Id.* The legislature created no similar provision for basic economic loss benefits. That enactment is not, however, directly probative of legislative intent with respect to basic economic loss benefits. We believe that an "excess" clause would be unnecessary if an insured elected to buy additional coverage.

There is ample justification for this construction in the plain language of the Act. Moreover, the implications of this case are not as grave a result for the insurance industry as Western National, MSI, and amicus argue. The court would *not* be allowing "cross-priority stacking" in the pre–1985 sense. Those cases interpreted the priority section as it applied to basic economic loss benefits. We prohibited stacking in part because of the windfall an insured would receive in benefits for which no premium had been paid. Those interpretations remain unchanged. The priority section continues to apply to determine the payment source of an individual's basic economic loss coverage. This decision gives effect only to additional first-party economic loss benefits that an insured chooses to purchase over and above basic coverage.

▮ The 1985 amendment is referred to as the anti-stacking amendment. As the court of appeals properly stated in its opinion, this case does not pose a stacking issue. The coverages of MSI and Western National are still in two priority levels. The legislature never changed that, and MSI is obligated to pay its measure of no-fault coverage. However, the legislature also intended to require insurers to offer optional coverage to individuals buying no-fault coverage. That additional coverage required payment of an increased premium and covers the persons under the policy; it does not follow the vehicle. Meister's father covered him by electing to provide an additional $20,000 in medical and $20,000 in wage loss benefits in addition to basic economic loss benefits. It is this additional coverage only that Meister seeks to recover from Western National. We hold that he can do so absent the business loss exclusion.

▮ This raises the final issue of the efficacy of the business use exclusion in Western National's policy. The exclusion does not apply because we think the legislature mandated the availability of additional benefits without restriction. The exclusion would invalidate additional coverage purchased. To hold otherwise would mean that an insured party would receive very little for the purchase of additional insurance. It makes no sense that one could receive $40,000 in wage loss and $40,000 in medical benefits if injured while in his own vehicle, but not when riding a commercial vehicle.

When one purchases no-fault insurance for a commercial vehicle, one rate is paid; when buying it for personal use, another is paid. However, the rate is set for the basic coverage required by the Act. Looking at the statute as a whole, it makes no sense to apply a business use exclusion to extra or

optional coverage. The occasional case where that coverage would be triggered would have little effect on rates. Moreover, that optional coverage insures persons, not vehicles, and an additional premium has been paid to protect those persons in whatever vehicle they are riding or driving at the time of the accident. Thus, in this case, the business vehicle basic coverage is applied first. The basic coverage on the Meister's policy does *not* apply. Only the optional additional benefits are applicable as needed to cover the proven loss.

We believe that there is abundant support for invalidating the business use exclusion Western National argues is applicable here. First, the exclusion and the Minnesota personal injury protection endorsement apply only to the basic economic loss benefits that Meister's father purchased on his own vehicles. Western National argues that the provision excludes "additional" or "optional economic loss benefits" coverage *in addition to* excluding basic economic loss coverage. However, such an exclusion would be a shocking surprise to the thousands of Minnesotans who have chosen to pay additional premiums to insure against a risk of injury of this degree.

Western National is correct in arguing that it may limit its liability by the terms of the insurance contract so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes. *Streich v. American Family Mut. Ins. Co.*, 358 N.W.2d 396, 399 (Minn.1984). Contrary to Western National's argument, however, the 1985 antistacking amendment does require it to provide additional economic loss benefits to those who choose to purchase them. Minn. Stat. § 65B.47, subd. 7 contains a mandatory offer of additional insurance: The insurer must provide stacked coverage *if the insured chooses to purchase it.* Professor Steenson, in addressing the impact of the language of subdivision 7, agrees: "The statute does not specify the standards to which insurers will be held, but the standards previously applied by the supreme court to its mandatory offer cases would

appear to be relevant to resolve the issue." Steenson, *supra* p. 7, at 148.

The statutory duty to offer other than basic coverages predated the no-fault act. *Id.* at 257. Although the failure to offer coverage is not at issue here, it is instructive to note that, had Western National failed to do so here, the court would have implied the additional coverage under its "mandatory offer" cases. *See, e.g., Lewis v. Pennsylvania Gen. Ins. Co.*, 391 N.W.2d 785, 790 (Minn.1986); *Kuchenmeister v. Illinois Farmers Ins. Co.*, 310 N.W.2d 86 (Minn.1981); *Holman v. All Nation Ins. Co.*, 288 N.W.2d 244 (Minn.1980). In this sense, additional or optional economic loss benefits coverage is "required" under the Act.

Finally, this court has long held that coverage for economic loss benefits protects people, not vehicles. *Wasche*, 268 N.W.2d at 918; *see also Iverson v. State Farm Mut. Auto. Ins. Co.*, 295 N.W.2d 573, 575 (Minn.1980) (uninsured motorist coverage). Here, Meister's father paid an extra premium for additional coverage to protect the people covered under his policy. Western National cannot deny that coverage under an exclusion relating to vehicle-tied coverage, although clearly coverage for *basic economic loss benefits,* is vehicle-tied. *See* Minn.Stat. § 65B.47, subds. 1–5 (1988); *see also* UMVARA § 4, 14 U.L.A. 56 (1990).

Meister raises the additional issue of whether the Gunflint Lodge truck would even trigger the business vehicle priority because it was not being used for business purposes. Since this issue was decided adversely to Meister below and was not raised on appeal, we decline to decide the issue.

Meister is entitled to collect $20,000 in medical expenses and $20,000 in non-medical no-fault benefits under each of the two policies written by MSI and Western National to the extent he proves such losses. The court of appeals is thus affirmed.

SIMONETT, Justice (dissenting).

I respectfully dissent.

When Michael Meister was thrown off the pickup truck, he was entitled to no-fault economic loss benefits. But from whose policy? The answer, at least up until now, has been to look to Minn.Stat. § 65B.47 (1988), entitled "Priority of Applicability of Security for Payment of Basic Economic Loss Benefits."

Subdivision 1 of the Priority Statute provides that if Michael was injured while driving or occupying a motor vehicle "while the vehicle is being used in the business of transporting persons or property," the basic economic loss benefits are to be paid by the insurance "covering the vehicle." Everyone now agrees that this subdivision does not apply.

Subdivision 2 provides that if Michael was an employee and was driving or occupying a motor vehicle furnished by the employer, basic economic loss benefits are to be paid by the insurance covering the vehicle. The majority opinion, agreeing with the court of appeals, holds that this subdivision applies. Mutual Service Casualty Insurance Company, as insurer of the pickup truck furnished by its employer-owner to Michael and his co-employees, is therefore required to pay its basic economic loss benefits of $20,000/20,000 to Michael.

Michael, however, would like to recover more than Mutual Service's $20,000/20,000. He looks, therefore, to the insurance policy covering the automobiles owned by Michael's father under which Michael would be an insured. This policy, issued by Western, provides $40,000/40,000 in stacked economic loss benefits. To invoke these benefits, Michael has to come under subdivision 4 of the Priority Statute which says, in pertinent part, "In all other cases, the following priorities apply: (a) The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured."

The trial court refused to allow Michael to reach Western's $40,000/40,000 because this would mean crossing the priority levels of the Priority Statute. In so ruling, the trial court applied the well-established case

law of this court. *Wasche v. Milbank Mut. Ins. Co.,* 268 N.W.2d 913 (Minn.1978); *Murphy v. Milbank Mut. Ins. Co.,* 320 N.W.2d 423 (Minn.1982); and *Koons v. National Family Ins. Co.,* 301 N.W.2d 550 (Minn.1981).

The majority opinion, however, following the lead of the court of appeals, believes it has found a way to avoid, at least in part, the Priority Statute. In 1985, the legislature amended the No–Fault Act to include an anti-stacking provision:

Unless a policyholder makes a specific election to have two or more policies added together the limit of liability for basic economic loss benefits for two or more motor vehicles may not be added together to determine the limit of insurance coverage available to an injured person for any one accident. An insurer shall notify policyholders that they may elect to have two or more policies added together.

Minn.Stat. § 65B.47, subd. 7 (1988).

No longer, after this amendment, may an owner of several automobiles automatically stack the economic loss benefits coverages of the several automobiles to cover an injury an insured suffers while driving or occupying one of the vehicles. If such an insured wants to stack, the insured now must elect to add together the benefit coverages of his several automobiles and pay a premium for doing so.

This, I believe, was the legislative intent of the anti-stacking amendment. The majority opinion goes beyond this intent. The court reasons that when Michael's father elected to stack his basic economic loss coverages, thereby raising his coverage to $40,000/40,000, that the second tier of $20,000/20,000 is not really basic economic loss benefits. Rather, the election results in something called "optional benefits" that float free of the Priority Statute. Consequently, the majority opinion holds that Michael may collect $20,000/20,000 basic economic loss benefits from Mutual Service plus an additional $20,000/20,000 benefits

from Western's stacked coverage on one of the two cars that Michael's father owns.[1]

Minn.Stat. § 65B.44, subd. 1 (1988), says basic economic loss benefits "shall provide a *maximum* of $40,000" in benefits, consisting of $20,000 for medical expense loss and $20,000 for income loss and other specified expenses.[2] The court of appeals attributed great significance to the word "maximum." It concluded that any economic loss benefits in excess of the $20,000/20,000 "maximum" must be "outside" the definition of basic economic loss benefits, and consequently must be something else. *Meister v. Western Nat'l Mut. Ins. Co.*, 465 N.W.2d 428, 431 (Minn.App.1991). It seems to me, however, that this analysis confuses the nature of basic coverage with the limits of basic coverage.

An insurer may, of course, choose to offer benefit coverage in addition to the compulsory limits required by the No-Fault Act, *see* § 65B.49, subd. 7 (1988), and this additionally purchased coverage is thought of as "optional" coverage. For example, insurers may and do offer optional benefits over and above the required $20,000/20,000. This optional coverage existed prior to 1985 and has always been understood to be subject to the Priority Statute. The majority opinion says, however, that under the 1985 anti-stacking amendment, if the insured elects to stack benefits coverages (which can only be done if the insured owns two or more motor vehicles) this stacking creates a new kind of "optional" benefits. These "optional benefits" occur even though, from the insurer's standpoint, the stacking offer is mandatory.

The majority seems to believe that when basic economic benefit coverages on each of the insured's cars are "added together," half the coverage remains subject to the Priority Statute while the other half floats free, following the person, not subject to the prohibition against cross-priority stacking, and even impervious to any business vehicle exclusion. This seems to me particularly creative judicial legislation.

By allowing an insured to elect to stack basic economic loss benefits, the legislature did not, in my view, change the character or parameters of basic economic loss benefits, nor did it create some new kind of free-floating first party coverage. In this case, basic economic loss benefit coverages of $20,000/20,000 on two vehicles are simply stacked or added together. When added together, these coverages are still payable according to the provisions of the No-Fault Act, one of which is the Priority Statute. The anti-stacking amendment did not amend the Priority Statute. The 1985 amendment was meant only to allow an insured to elect to return to a pre-1985 stacking situation. Therefore, P.I.P. coverages (Personal Injury Protection), even when stacked at the election of the insured, afford coverage only within their priority level.

This, too, is the view of Professor Steenson. After stating that the purpose of the 1985 amendment was to eliminate stacking unless the insured makes an election to stack, Professor Steenson went on to say, "Once the election is made, stacking should be permitted according to the principle previously established in *Wasche.*" M. Steenson, 1 *Minnesota No-Fault Automobile Insurance* (2d ed. 1989) 148.

I would, therefore, reverse and reinstate the trial court's decision, but I do so with

---

1. In an attempt to avoid overruling *Wasche, Murphy,* and *Koons,* the majority opinion holds that half of Western's $40,000/40,000 stacked coverage remains "basic" and, therefore, subject to the Priority Statute.

2. Minn.Stat. § 65B.44, subd. 1 (1988) reads as follows:

    Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and shall provide *a maximum of* $40,000 for loss arising out of the injury of any one person, consisting of:

    (a) $20,000 for medical expense loss arising out of injury to any one person; and

    (b) a total of $20,000 for *income loss,* replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person.

    (Emphasis added.)

reluctance. The insured who elects to stack benefits does so to get added benefit protection. Yet, because of the Priority Statute, the insured, in an accident such as we have here, is required to accept the benefits provided at a different priority level which were purchased by someone else who chose to leave its coverage at only the $20,000/20,000 basic coverage. As the court of appeals and the majority opinion quite rightly point out, here the Priority Statute works to deprive the insured of his own prudent insurance purchase. The problem is that to make the second tier of stacked benefits free-floating, the court must overrule established case law and write into the No–Fault Act language that is not there.

KEITH, Chief Justice (dissenting).
I join in Justice Simonett's dissent.

COYNE, Justice (dissenting).
I join in Justice Simonett's dissent.