**Christopher PECINOVSKY and Lorraine Pecinovsky, individually and as parents and natural guardians of Sara Pecinovsky, a minor, Respondents,**

v.

**AMCO INSURANCE COMPANY, Appellant.**

No. C6–00–7.

Court of Appeals of Minnesota.

July 18, 2000.

---

1. In light of this decision, it is unnecessary to reach other issues concerning defamation.

Raymond L. Hansen, O'Brien, Ehrick, Wolf, Deaner & Maus, L.L.P., Rochester, for respondents.

George C. Hottinger, Paul D. Reuvers, Erstad & Riemer, P.A., Minneapolis, for appellant.

Considered and decided by DAVIES, Presiding Judge, LANSING, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge

Respondents commenced this declaratory-judgment action seeking to stack per-

sonal-injury protection benefits available under their automobile-insurance policy. Respondents contend that stacking should occur by operation of law because appellant did not offer the stacking option as required by Minn.Stat. § 65B.47, subd. 7 (1998). A jury concluded that appellant failed to offer stacking to respondents, and the district court read stacking coverage into respondents' policy and entered judgment against appellant. Appellant contends that it is entitled to judgment notwithstanding the verdict because it gave sufficient notice to respondents as a matter of law or, alternatively, that it is entitled to a new trial because the district court erroneously instructed the jury as to its obligations regarding the notification requirement. Because we find that the trial court erred in denying appellant's motion for judgment notwithstanding the verdict, we reverse.

## FACTS

Appellant AMCO Insurance Company (AMCO) provided automobile insurance to respondent Christopher Pecinovsky and his family. Pecinovsky insured two vehicles with AMCO. He first applied for and received coverage from AMCO in 1989. Pecinovsky's initial application for insurance indicates that he declined the option of stacking the personal injury protection (PIP) benefits available under the policies. The bottom of the first page of the application reads:

"STACKING OF PERSONAL INJURY PROTECTION"

The "Stacking" of Personal Injury Protection (PIP) coverages is excluded. However, policyholders may elect to "stack" PIP benefits. "Stacking" is the adding together of the same coverages from two or more insured vehicles to arrive at an aggregate total coverage available. Unless a policyholder makes a specific election to have two or more auto limits added together, the limit of liability for Personal Injury Protection coverages may not be added together to determine the amount of insurance coverage available.

Adjacent to this disclosure of the option to stack PIP benefits is a box that contains a check-off for the insured to indicate whether or not they elect to stack the PIP benefits. On Pecinovsky's application, the "no" box is checked, indicating that the option of stacking the PIP benefits is declined.

Pecinovsky denied having checked this box and denied that the stacking option was explained to him. The insurance agent who sold Pecinovsky the policy indicated that he did not recall specifically their meeting in 1989 when the application was completed, but that his normal practice is to discuss stacking with his clients. Additionally, over the course of the several years that the insurance policy remained in force, AMCO sent Pecinovsky various documents that disclosed the availability of stacking. Both parties agree that Pecinovsky never affirmatively elected to stack his PIP benefits.

On May 22, 1998, an automobile struck Pecinovsky's daughter after she exited a school bus. AMCO did not contest that Pecinovsky's daughter was covered under the policy and paid $20,000 toward her medical expenses. Her medical bills, however, exceeded $20,000, and Pecinovsky sought additional coverage from AMCO. In September 1998, Pecinovsky brought a declaratory-judgment action against AMCO, alleging that he was entitled to stack the PIP coverage for his two vehicles as a matter of law because AMCO had failed to comply with Minn.Stat. § 65B.47, subd. 7 (1998). Pecinovsky contends that this statute requires insurers to "offer" the option of stacking PIP benefits and that AMCO failed to do so.

The matter proceeded to a jury trial and the jury returned a verdict in favor of

Pecinovsky. It found that AMCO had failed to comply with the statute by not making an effective offer of the stacking option to Pecinovsky. AMCO moved the trial court for a judgment notwithstanding the verdict or, alternatively, a new trial. The trial court denied AMCO's motions.

## ISSUES

1. Did the trial court err in denying appellant's motion for a judgment notwithstanding the verdict?

2. Did the trial court err in denying appellant's motion for a new trial?

## ANALYSIS

■ AMCO contends that the trial court erred by denying its motion for a judgment notwithstanding the verdict. This motion was based on its argument that, contrary to the trial court's conclusion, Minn.Stat. § 65B.47, subd. 7 (1998), does not require an insurer to "offer" the option of stacking personal injury protection (PIP) benefits as the trial court concluded. Rather, AMCO contends that the language of the statute is clear and only requires the insurer to "notify" the insured of the option to stack PIP benefits.

■ "The denial of a motion for judgment notwithstanding the verdict * * * presents a legal question subject to de novo review." *Gilbertson v. Leininger,* 599 N.W.2d 127, 130 (Minn.1999). This case involves the interpretation of Minn. Stat. § 65B.47, subd. 7. Appellate courts review issues of statutory interpretation de novo. *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992).

Prior to 1985, courts interpreted the Minnesota no-fault act to require "stacking" of PIP benefits. Stacking is a term of art that refers to the practice of adding two or more policies together to increase the amount of coverage for a claim. The

Minnesota Supreme Court first recognized the right to stack in *Wasche v. Milbank Mut. Ins. Co.,* 268 N.W.2d 913 (Minn. 1978). But in 1985, the legislature amended the no-fault act by eliminating stacking unless insureds elect to stack and by requiring insurers to notify insureds of their right to elect to stack two or more policies. Minn.Stat. § 65B.47, subd. 7 (Supp.1985).

The language of Minn.Stat. § 65B.47, subd. 7, has remained unchanged since 1985. It reads:

> Unless a policyholder makes a specific election to have two or more policies added together the limit of liability for basic economic loss benefits for two or more motor vehicles may not be added together to determine the limit of insurance coverage available to an injured person for any one accident. *An insurer shall notify policyholders that they may elect to have two or more policies added together.*

*Id.* (emphasis added).

The trial court determined that the phrase "shall notify" obligated insurers to offer the option of PIP stacking to its insureds. The trial court relied on what both parties agree is dictum in the supreme court's *Meister* decision. In *Meister,* the supreme court stated:

> Minn.Stat. § 65B.47, subd. 7 contains a mandatory offer of additional insurance: The insurer must provide stacked coverage *if the insured chooses to purchase it.* Professor Steenson, in addressing the impact of the language of subdivision 7, agrees: "The statute does not specify the standards to which insurers will be held, but the standards previously applied by the supreme court to its mandatory offer cases would appear to be relevant to resolve the issue". [Michael K. Steenson, 1 *Minnesota No–Fault Automobile Insurance* 148 (2d ed.1989) ].

The statutory duty to offer other than basic coverages predated the no-fault

act. Although the failure to offer coverage is not at issue here, * * * the court would have implied the additional coverage under its "mandatory offer" cases.

479 N.W.2d at 379 (citations omitted).

■ We concur with the parties that the language quoted above is dictum. The issue of stacking PIP benefits was not before the court in *Meister.* Respondents nonetheless contend that because the dictum appears to be an expression of the opinion of the supreme court regarding the meaning of the phrase, it should be followed. But this court recently noted that a supreme court dictum is not controlling.

Dicta are expressions in a court's opinion that go beyond the facts before the court and therefore are the individual views of the author of the opinion and not binding in subsequent cases.

*K.R. v. Sanford,* 588 N.W.2d 545, 548 (Minn.App.1999), *aff'd,* 605 N.W.2d 387 (Minn.2000). We further note that, in expressing dicta, a court has not had the benefit of adversarial briefing and argument focusing on the issue.

■ Despite the implication from the supreme court that the phrase "shall notify" has the same meaning as the phrase "shall offer," we find AMCO's arguments that the two phrases are not equivalent to be persuasive. First, the mandatory-offer cases referred to by the supreme court in *Meister* involve a provision of the no-fault act that was repealed in 1980, and second, the legislature specifically chose the phrase "shall notify" in 1985 when it amended Minn.Stat. § 65B.47, subd. 7.

The provision of the no-fault act at issue in the mandatory offer cases stated that insurers "shall offer * * * optional cover-

ages." Minn.Stat. § 65B.49, subd. 6 (1978). The optional coverages that insurers were required to offer included, among others, uninsured and underinsured motorist coverages. The supreme court first addressed the failure to offer these optional coverages in *Holman v. All Nation Ins. Co.,* 288 N.W.2d 244 (Minn.1980).[1] In that case, the court held that if an insurer failed to make the statutorily mandated offer, those coverages would be read into the "policy by operation of law." *Id.* at 250. The legislature immediately responded to the *Holman* decision by repealing Minn.Stat. § 65B.49, subd. 6. *See* 1980 Minn. Laws ch. 539, § 7. The legislature's prompt response to the *Holman* decision is evidence that it did not intend for an insurer's failure to offer the optional coverages to result in those coverages being read into policies by the courts.

■ When the legislature amended Minn.Stat. § 65B.47 in 1985 and added subdivision 7, it chose to use the phrase "shall notify" rather than "shall offer" that had been previously used in Minn.Stat. § 65B.49, subd. 6.

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. * * *

When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

* * * *

(5) The former law, if any, including other laws upon the same or similar subjects[.]

---

1. A series of cases followed the *Holman* decision and read coverage into policies when the insurer failed to offer the coverage to the insured. *See, e.g., Hastings v. United Pac. Ins. Co.,* 318 N.W.2d 849, 851–53 (Minn.1982);

*Kuchenmeister v. Illinois Farmers Ins. Co.,* 310 N.W.2d 86, 88–89 (Minn.1981); *Pinney v. State Farm Fire & Cas. Co.,* 435 N.W.2d 105, 108 (Minn.App.1989), *review denied* (Minn. Apr. 24, 1989).

Minn.Stat. § 645.16 (1998). Courts presume that the legislature acts with full knowledge of previous statutes and existing caselaw. *See Minneapolis E. Ry. Co. v. City of Minneapolis*, 247 Minn. 413, 418, 77 N.W.2d 425, 428 (1956). Because of this, the legislature's choice of the phrase "shall notify" is significant. *Cf.* Minn.Stat. § 645.17(4) (1998) (providing that "[w]hen a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language"). We assume that the legislature was aware of the manner in which the court had interpreted the phrase "shall offer," and its decision to use a different phrase implies that it intended the new phrase to have a different meaning.

Additionally, the words "offer" and "notify" have different dictionary definitions. *See* Minn.Stat. § 645.08(1) (1998) (providing that "[w]ords and phrases [in statutes] are construed according to rules of grammar and according to their common and approved usage"). *Black's Law Dictionary* defines offer as "[t]he act or an instance of presenting something for acceptance" and

> [a] promise to do or refrain from doing some specified thing * * * made in a way that would lead a reasonable person to understand that an acceptance * * * will result in a binding contract.

*Black's Law Dictionary* 1111 (7th ed.1999). It defines the word notify as "[t]o inform (a person or a group) in writing or by any method that is understood" and "[t]o give notice of; to make known." *Id.* at 1090. The *American Heritage Dictionary* contains definitions similar to those in *Black's* and defines the two words differently. *American Heritage Dictionary* 1238, 1255 (3d ed.1996). It also lists several synonyms for the word "offer," and the word "notify" is not among them. *Id.*

We conclude that the legislature intended the phrase "shall notify" to have a meaning different from the "shall offer" language it had previously used. The word "notify" connotes a lesser duty on the insurer than does the word "offer." The record is replete with evidence that Pecinovsky was notified of his option to elect to stack his PIP benefits, and we hold as a matter of law that AMCO met the burden imposed by Minn.Stat. § 65B.47, subd. 7.

Because we hold that the trial court erred in denying AMCO's motion for judgment notwithstanding the verdict, we need not address the trial court's denial of AMCO's alternative motion for a new trial.

## DECISION

Minn.Stat. § 65B.47, subd. 7 (1998), provides that a no-fault insurer "shall notify" its insureds of the right to elect to stack PIP benefits. This statute imposes a lesser duty upon the insurer than Minn.Stat. § 65B.49, subd. 6 (1978), which was repealed in 1980 and provided that insurers "shall offer" insureds various optional coverages. AMCO provided adequate notice to respondents and is entitled to judgment notwithstanding the verdict.

**Reversed.**